IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA



FILED BY_____✓_____D.C.

JUL 02 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

Todd E. Watson,                                           Original Pleading

    Plaintiff,

v.

Broward County Sheriff's office, Broward County State Attorney's office Broward County Internal Affairs office, Four U.S. Marshall's, Al Lamberti, Scott Isreal, Gregory Tony,

William Schwartz, Gregory Lecarra, George Anthony, Lisa McElhaney,

Yadell Romero, Det. Kogan, Joseph Kessling, Lt. Gordon, William Wesolowski,

David Fernandez, Christopher Cathcart, Joseph Kessling, Michael Satz, Denise Neuner,

Morgan Rood, Howard Finkelstein. Tamara Curtis, Lyle Long, Cheryl Koeing, Kenneth Gillespie, David Haimes, Jeffrey Levenson, Edward Merrigan, Sandra Perlman, Peter Weinstein Elizabeth Scherer,

Michael Happ Sandi Digiaimo, Vivian Rock, William Steers, Dena Aiello, C.Craig Stella, Chris Osborne, Toby Schultz, Gabriella Novo,  Jorge Labarga, Katherine Fernandez Rundle, Michael Von Zamft, Lara Penn, Carlos Martinez, Claudia Carrazana, Kristina Gotera, Marjorie Alexis.

      Defendants.

-----------------------------------------------/

COMPLAINT                          *Broward County State Attorney office*
*Broward Internal Affairs*

    Plaintiff, Todd Edward Watson, Sues Defendants, Broward Sheriff's Office, and all named persons in both their individual and professional capacities, and states the following:

1.  This is an action for damages that arose from a 03/24/2009 arrest by Broward Sheriff's officer's that spawned an unprecedented ten year long conspiracy of pre-meditated Constitutional Rights Violations and actual felony crimes. The overwhelming amount of undisputed facts, and clear and convincing evidence proving such are contained herein- laid out in a plethora of causes of actions (CLAIMS). All allegations remain undisputed.

Parties, Jurisdictional, Venue

2.  This is an action for an amount placing it within this Court's jurisdiction.
3.   Venue is proper for this Court as the occurrences which gave rise to instant litigation originally occurred in Broward County, Florida.
4.  Defendant, Broward Sheriff's office is a Florida municipal corporation located in Broward County Florida, Florida and is sui juris.
5.  Defendant, Broward State Attorney's office is a Florida municipal corporation located in Broward County Florida, Florida is sui juris.
6.  Defendant's, four U.S. Marshalls, names unknown at this time however retrievable through discovery.

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

7. Defendants, Lamberti and Isreal were former elected Broward County Sheriff's. Defendant, Gregory Tony is the current Broward County Sheriff appointed by Governor Ron Desantis.

8. Defendants, Schwartz, Lecarra, Romero, Anthony, Kogan, McElhaney, and Kessling, are law enforcement officer's employed by the Broward Sheriff's office.

9. Defendants, Gordon, Wesolowski, and Fernandez, were former Lieutenants of the Internal Affairs Division within the Broward County Sheriff's office. Christopher Cathcart is the current lieutenant of the Broward County Internal Affairs division.

10. Defendant, Michael Satz, is the current Broward County State Attorney.

11. Defendants, Denise Neuner and Morgan Rood are Assistant State Attorneys employed by the Broward County State Attorney's office.

12. Defendants, Gillespie, Haimes, Levenson, Merrigan, Perlman, Weinstein, and Scherer are sitting Judges presiding within the 17th judicial circuit of Broward County Florida.

13. Defendant, Howard Finkelstein is the current elected Public Defender for Broward County. Curtis and Koeing are current Assistant Public Defenders, and Long is a former Assistant Public Defender.

14. Defendant's, Happ, Digiaimo, and Rock are transcriptionist's employed as officers of the court for the 17th judicial circuit Broward County, Florida.

15. Defendant, Jorge Labarga is a sitting Judge for the Florida Supreme Court.

16. Defendant, Tunis, is a SITTING Judge within the 11th circuit Dade County, Florida.

17. Defendant, Carlos Martinez is the elected Public Defender for the 11th Circuit Dade County, Florida, Defendant's Carrazana, Gotera, and Alexis are Assistant Public Defender's currently employed by the Dade County Public Defender's Office. Some case law asserts Public Defender's are private actors. If this court were to deem such these named private actors worked in concert with State actors to deprive the Plaintiff of his liberties.

18. Defendant, Rundle is the current Dade County Sate Attorney. Defendant's Von Zamft, and Penn are Assistant State Attorney's currently employed by the Dade County State Attorney's Office.

19. Defendants, Stella, Aiello, and Steers, Osborne, Schultz, and Novo are private actors who acted in concert with State actor's to deprive Defendant of his constitutionally protected rights.

20. Plaintiff is a resident of Broward County, Florida.

21. All conditions precedent, as required by Florida Statute 768.28, to filing this action will be met. A copy of the notice of claim served pursuant to that statute will be attached hereto as Exhibit A.

22. In the political climate to shut down "PILL MILLS', acting on false information provided by State's informant Staphanie Romanski, in the zeal to prosecute the owner of a pain clinic, and expecting the ends to justify the means, on 03/24/2009 nine (9) Broward County special task force agent's;

    (a) Concocted and executed a pre-meditated conspiracy to falsely arrest and falsely imprison Plaintiff Todd E. Watson.

    (b) "forced" their informant William Glenn Steers tp perform knowingly perjuredtestimony.

    (c) Destroyed/wiped the audio tape contained on digital recorder #100118958

-   (d) Worked out an illegal arrangement with Prescription Pad Pharmacy owner DR. Chris Osborne to illegally re-fill prescription bottle #642015 and fabricate a sign in log in exchange for not being prosecuted for illegally compounding oxycodone pills.

-   (e) Intentionally did not investigate or prosecute a bevy of blatant actual felony crimes.

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

- (f) The unprecedented 10 year, long conspiracy of Constitutional Rights violations and actual felony crimes committed in an effort to conceal those committed on 03/24/2009 are memorialized as the causes of actions contained herein.

COUNT 1- FALSE ARREST-DEPRIVATION OF CONSTITUTIONAL RIGHTS UNDER 42 U.S.C. 1983-LECARRA, SCHWARTZ, ROMERO, ANTHONY.

23. Plaintiff re-alleges and re-avers paragraphs 1-19 above as restated herein.

24. According to the probable cause affidavit (see Exhibit B) On 03/24/2009 The central Broward Selective Enforcement team received a crime stoppers tip stating that prescription drugs were being sold out of a home located at 2040 SW 41st Ave, Ft. Lauderdale, Fl. Upon making contact with the source (William Glenn Steers) a plethora of prescription bottles containing a variety of narcotics and prescription scripts (see exhibit C sworn incident report at p.p. 2,3) were discovered hidden "behind a stove" (see exhibit D 3/24/09 sworn statement of Steer's at pg. 3 of 27). Importantly Detective Gregory Lecarra is the lead Detective and author of the fabricated Probable cause Affidavit involving the 03/24/2009 arrest of Plaintiff.

25. Every single solitary piece of evidence in the possession of Law enforcement or reasonably discoverable, subsequent to the search of Mr. Steer's residence but prior to the arrest of Plaintiff proved that the crime stoppers tip was 100% true and accurate, that Mr. Steer's was doctor shopping and selling a portion of his medications "out of [his] home". There's not a shred of evidence, in the possession of the police, that would leave a reasonable, prudent, person to believe that the Plaintiff had, in the past, or was about to, commit a crime, prior to the Plaintiff's warrantless arrest on 3/24/09.

26. The allegation that, law enforcement "forced" informant William Steer's to put forth knowingly perjured testimony in his sworn statement on the evening of 03/24/2009 in regards to illegal transactions are as follows:

"The source [Steer's] went on to explain that Watson (defendant) writes the scripts in the sources name, gives the source money and tells him to get them filled. After filling the scripts the source then calls the Defendant to tell him the scripts are filled. The Defendant them comes and picks the pills up from the source and then re-sells the pills to other subjects." See Exhibit B -Putting aside the illogical, ludicrous, reasoning to this allegation on its face, that the owner of a pain clinic would need to fraudulently write prescriptions for the purpose of selling the pills to unknown subjects, the evidence to the contrary, in the possession of law enforcement, prior to the Plaintiff's arrest is as follows:

- Any and or all alleged illegal transactions between the Plaintiff and Mr. Steers were initiated by the Plaintiff hand writing fraudulent prescriptions to Mr. Steers.

Q- OKAY HOW DID IT END UP ACTUALLY HAPPENING?

A-IT ENDED UP AFTER THAT IT TURNED INTO JUST THE OPPOSITE HE [PLAINTIFF] WAS WRITING PHONY PRESCRIPTIONS AND HAVING ME AND SEVERAL OTHER INDIVIDUALS FILL THEM

(SEE, Exhibit D pg. 9 of 27)

-On page 9 of 27 of Mr. Steer's sworn statement (Exhibit D) the conversation went as follows:

Q. Which Doctor's did he (Plaintiff) use when doing this?

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

A. Um it started off with um who was the first one Pham, Doctor Christopher Pham, Doctor Freidberg, ah Doctor Losito, Doctor Glosser and Doctor Zappi ah that's all I can right off remember.

Q. Was there ever a Doctor Goloff that you know of?

A. Yes and a Doctor Goloff.

Q. Okay how many of these Doctors that you just named well I'll go through them one at a time. Have you ever seen Doctor Pham as a legitimate patient?

A. NO

Q. So Doctor Pham has never written you a valid prescriptioin?

A. No.

Q. DR. Freidberg?

A. No.

Q. Doctor Losito?

A. No

Q. Dr. Glosser?

A. No.

Q. Doctor Zappi?

A. No

Q. DoctorGoloff?

A. No.

-On page 71 of the State's discovery (see Exhibit E) is a copy of a legitimate computer generated prescription, authorized by Doctor Christopher Pham, the day prior to Defendants 03/24/2009 arrest.

- Dr. Christopher Pham is one of the Doctors Mr. Steers states in his sworn statement, he never saw as a legitimate patient, or received a legitimate prescription from him.

-The hard copy of this prescription was in the actual, constructive possession of Detective William Schwartz, during above conversation within Steers sworn statement. A sworn statement that Det. Schwartz affirmed, when Mr. Steer's swore he never saw Doctor Pham as a legitimate patient and never received a legitimate prescription from Doctor Pham.

- Importantly, the day after Plaintiff's arrest, but prior to filing charges against Plaintiff Detective Schwartz is memorialized to have entered this piece of evidence (while once again physically in his possession) into his sworn incident report as non- drug evidence item #4. (SEE Exhibit C, at 2)

- This one piece of evidence in and of itself proves that any and or all allegations of illegal transactions between Mr. Steer's and the Plaintiff were Pre-meditated fabrications concocted by Detectives involved in Plaintiff's 03/24 /2009 arrest.

- The State's own informant clearly identifies six (6) different Doctors who's names the Plaintiff would use when hand writing fraudulent prescriptions (see Exhibit D at11 of 27) and clearly identifies 9 different pharmacies these alleged fraudulent prescriptions would be cashed at.(see Exhibit D at pg 23 of 27).

- With all this clearly identified information and with all the resources available to the Broward Sheriff's office and Broward State Attorney's office, and not one fraudulent prescription was ever recovered, BECAUSE THEY DON'T EXIST-IT LOGICALLY FOLLOWS IF THERE WERE NEVER ANY FRAUDULENT PRESCRIPTIONS WRITTEN BY THE PLAINTIFF TO MR. STEER'S AND FRAUDULENT PRESCRIPTIONS ARE WHAT ARE ALLEGED TO HAVE INITIATED ANY AND OR ALL ILLEGAL

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

TRANSACTIONS BETWEEN PLAINTIFF AND MR. STEERS, THERE WHERE NEVER ANY ILLEGAL TRANSACTIONS BETWEEN PLAINTIFF AND MR. STEER'S.

24- On page 18 of 27 of Steer's sworn statement it state's in pertinent part:

Q. One of the prescriptions that you filled earlier for roxycodone was filled at Chronic Care that was from Doctor Pham and earlier today unbeknownst to law enforcement prior to them coming in contact with you you delivered one hundred of those pills to Todd Watson is that correct?

A. Correct

- The very bottle Detective Schwartz is describing above that was allegedly delivered earlier in the day to Plaintiff on 3/24/09 is physically in Detective Schwartz's possession during Steers sworn statement later that evening, while he is describing it being delivered earlier in the day to Plaintiff as described on pg. 5 of 27 of sworn statement.

Q. … The next bottle is RX number 150449, filled out to William Steers, again Chronic Care Pharmacy, again, Doctor Christopher Pham, on 3/23/09 original date and filled on 3/24/09 for oxycodone, 15 milligram tablets… is that correct?

A. Correct.

- This prescription bottle was recovered at William Steers residence after it was allegedly delivered to Plaintiff earlier in the day of 3/24/09.

- Importantly, Detective Schwartz once again describes this prescription bottle (allegedly delivered to Plaintiff earlier in the day of 3/24/09) while physically in his possession on pg. 2 of his sworn incident report the day after it was allegedly delivered to Plaintiff entered as drug evidence item #3: Prescription bottle (RX # 150449) labelled to William Steers for oxycodone 15 mg… quantity #100, allegedly authorized by Dr. Christopher Pham on 3/23/09. Filled at Chronic Care Pharmacy… (SEE Exhibit C at, 2)

- The purpose for this particular known fabrication is, when law enforcement make an arrest in regards to an alleged drug trafficking crime, without the benefit of a lawful warrant, law enforcement must have knowledge of at least one prior drug transaction.

25. Mr. Steers medical file (see Exhibit F) was in the possession of Law enforcement during the investigation at Plaintiff's office on the evening of 3/24/09 (prior to Plaintiff being booked at Broward County main jail) , as described at p.p.4 &5 of Exhibit C.

- Mr. Steers medical file makes indisputable that Doctors Goloff, Losito, and Glauser did in fact see Mr. Steer's as a legitimate patient and did in fact write Mr. Steers legitimate prescriptions

- All three (3) of these Doctors were alleged in Mr. Steers sworn statement on 3/24/09 not to have ever seen Mr. steer's as a legitimate patient or written him legitimate prescription's.

- Prior to Plaintiff being imprisoned on 3/24/09 law enforcement had in their possession evidence making it indisputable that all 6 Doctors identified in  Mr. Steer's sworn statement as Doctor's he had never seen as a legitimate patient or received legitimate prescriptions from, had in fact seen Mr. Steer's as a legitimate patient and wrote him legitimate prescription's. Not one molecule of evidence in the possession of police prior to Plaintiff's 3/24/09 arrest indicated he hand wrote fraudulent prescriptions to Mr. Steers or anyone else.

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

- It's important to point out that law enforcements motive at this juncture was that despite the overwhelming evidence they had in their possession that the Plaintiff had not been involved in any illegal activity with Mr. Steer's they believed that the Plaintiff was involved in illegal activity prior to informant Stephanie Romanski's January 2009 arrest. Therefore arresting the Plaintiff on 3/24/09 (despite not having probable cause to do so) would open the door to further investigation that law enforcement believed would lead to proving Plaintiff was previously involved in illegal activity. Hence the ends justify the means.

    - This motive is explained within Mr. Steer' sworn statement on p.p. 9,10, & 17.

26. Despite the overwhelming amount of evidence reasonably discoverable or in the possession of law enforcement proving the Plaintiff had not committed any crime nor was he about to, In the zeal to prosecute the owner of a pain clinic, and acting on false information provided by informant Stephanie Romanski, the sinister pre-meditated scheme to falsely arrest Plaintiff concocted by law enforcement is as follows:

- Law Enforcement was well aware, prior to coming in contact with Mr. Steer's for the first time on 3/24/09 that he was on a 10 year probation at that time. Subsequent to discovering an amount of illegally obtained prescription medications in Mr. Steer's constructive possession (hidden behind a stove) that would have immediately placed Mr. Steer's in jail, police offered MR. Steer's a deal to conspire with them to falsely arrest Plaintiff. A deal that saved Mr. Steer's from going to prison for a very long time. Not to mention the horrible detox Mr. Steers would have had to endure during his incarceration.

- Mr. Steers gave police truthful information that he had visited Plaintiff's medical office as a legitimate patient on 3/13/09. That Dr. Marilee Glauser had written Mr. Steer's a prescription for medications that resulted in him obtaining prescription bottle #642015.

-Mr. Steer's also advised police that during his 3/13/09 visit at Plaintiff's office he had a conversation with Plaintiff in regards to Plaintiff seeking to hire a pharmacist to be the medical director to oversee the dispensary the Plaintiff was planning on opening very soon and if Mr. Steer's was able to locate someone the Plaintiff could pay him a finder's fee/consultant.

-Given this information Law enforcement had Mr. Steer's show up at Plaintiff's office on 3/24/09 at approximately 1:00 p.m. and explain that he had a licensed pharmacist named "Raul" who was ready to begin working for Plaintiff immediately. The Plaintiff agreed to meet "Raul" later that same evening.

- The goal of Police was to lure Plaintiff into Mr. Steer's vehicle to then have Mr. Steer's hand Plaintiff a bottle of pills then arrest Plaintiff for constructive possession of pills, thus opening further investigation. Involved law enforcement officers were obviously visualizing their names all over the media.

-Mr. Steer's arrived at the hotel Plaintiff was staying at around 7:00 p.m on the evening of 3/24/09. Upon originally entering Mr. Steer's truck the Plaintiff advised he was cold that he wanted to go upstairs to get a sweater. NOTE: Plaintiff going back upstairs to retrieve a sweater because he was cold and believed he was being taken to a meeting with "Raul" put a damper on polices lies that Plaintiff was simply showing up to pick up pill's.

-Upon re-entering Mr. Steer's vehicle the conversation was as follows;

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

PLAINTIFF: So where are we going to meet Raul?

MR. STEER'S: We're going to meet Raul in a little while, but here here's a bottle I filled from Dr. Pham from a long time ago (Mr. Steer's then proceeded to place the bottle of pill's against Plaintiff's chest)

PLAINTIFF: (Picked up the pill bottle that fell onto his lap and replied) I don't get what are you giving me pill's for?

27. Soon after Plaintiff made this statement law enforcement slammed him on the ground and placed him under arrest (in hand cuffs).

-Det. William Schwartz was present during the arrest. Plaintiff had prior conversations with Det. Schwartz in regards to his arrest of Stephanie Romanski. Plaintiff and Det. Schwartz had a conversation outside Mr. Steer's vehicle immediately subsequent to Plaintiff's arrest that went as follows;

- PLAINTIFF: What are you guys doing I thought I was being taken to meet with a pharmacist named Raul.

- DET. SCHWARTZ: I heard something about a Raul but the entire conversation was recorded.

-PLAINTIFF: Good then you should be letting me go.

-DET. SCHWARTZ: That stuff you said about a pharmacy isn't going to look good for you.

-PLAINTIFF: What stuff about a pharmacy I never said anything about a pharmacy play the tape back.

P.P 25 & 26 of Steer's sworn statement (Exhibit D) performed the evening of 3/24/09 proves how pre-meditated the conspiracy to falsely imprison the Plaintiff was.

-Q. Okay did you (Mr. Steer's) make a comment to Todd while you were inside the vehicle about him being called by a pharmacy?

-A. Correct I did.
-Q. What did you say to him?

-A. I sa.. I told him Todd the pharmacy had an issue with one of the prescriptions you wrote me and they might be calling you tomorrow and to make sure that it was taken care of through his end so I wouldn't get in trouble about it.

***** The State's own evidence proves Plaintiff never "wrote" any fraudulent prescriptions to Mr. Steer's. It logically follows that there was never any conversation about a pharmacy contacting plaintiff in regards to an alleged fraudulently written prescription when it's indisputable NONE EXIST.

28. Det. Schwartz immediately thereafter turned the conversation that he had information that Plaintiff had a large amount had a large amount of illegal drugs and firearms stored in his medical office and if Plaintiff took law enforcement to his office and they found no illicit drugs or guns they would release the Plaintiff.

-The Plaintiff agreed and consented to allow Law Enforcement search his medical office (SEE p.p. 4 & 5 of Exhibit C)

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

- During the search the Plaintiff advised that he did not have a key to the future dispensary room that the Doctor's husband, Sheldon Glauser did. Law enforcement called Mr. Glauser and requested he show up with the key. (SEE pg. 4 of Exhibit C)

- Mr. Glauser lived in Boynton Beach, it took Mr. Glauser approximately 2 hours to arrive at Plaintiff's office with key. While waiting for Mr. Glauser to show Law Enforcement took the opportunity to search Plaintiff's office. One of the officers on the scene was Det. Yadell Romero, who showed Det. Schwartz a copy of Mr. Steer's medical file (see Exhibit F) comparing prescription #642015 with the Prescription inside Mr. Steer's file. Det. Romero then grabbed a few other files and showed them to Det. Schwartz proving the hand writing of DR. Glauser on prescription #642015 matched the files of other patients that Dr. Glauser had treated at the office. Despite Detective Schwartz being shown evidence that it was Dr. Glauser who in fact hand wrote prescription #642015, Detective Schwartz was so certain that Plaintiff had previously written fraudulent prescriptions he chose to continue the illegal arrest of Plaintiff. A decision Detective Romero made a conscious decision to conspire within. Detective Romero signed off on the sworn Probable Cause Affidavit knowing full well it was fabricated (see Exhibit B).

-Mr. Glauser arrived, opened the door to the future dispensary. No drugs or guns were found at Plaintiff's office (see Exhibit C, at 5). Despite not having any lawful authority to have initiated or continued the illegal investigation trampling all over Plaintiff's constitutionally protected rights and despite the promise if nothing was found the Plaintiff would be released Law Enforcement took Plaintiff to be booked for criminal processing.

- Importantly, subsequent to Mr. Glauser giving the key to dispensary room to law enforcement, he asked Det. William Schwartz why they were at the office. Det. Schwartz responded they were advised the Plaintiff was hand writing a large number of fraudulently written prescriptions. In particular Det. Schwartz advised Mr. Glauser that he was in possession of an alleged fraudulent prescription hand written by Plaintiff using his wife's name as the prescribing Doctor (DR. Marilee Glauser).

- In response Mr. Glauser requested to see the prescription, advising he had been married to Marilee for over 30 years he could authenticate whether or not the prescription Det. Schwartz had in his possession, was written by her. Det. Schwartz responded he would show Mr. Glauser the alleged fraudulent prescription prior to leaving.

- Just prior to leaving Plaintiff's office Mr. Glauser once again requested to view the prescription alleged to be fraudulently written in which Det. Schwartz responded "if we need you to look at it later we will let you know". DETECTIVE SCHWARTZ WAS CLEARLY AWARE OF THE FACT THAT THE PLAINTIFF DID NOT FRAUDULENTLY AUTHORIZE PRESCRIPTION #642015, PROR TO PLAINTIFFS IMPRISONMENT.

- Det. Schwartz did in fact record the conversation inside Mr. Steers vehicle onto digital recorder #100118958, however due to the fact that it exonerated Plaintiff while simultaneously proved police misconduct, Det. Schwartz destroyed/wiped the tap. The destruction of the recording inside Stters vehicle that in fact exonerates plaintiff is memorializes on page 20 of states discovery "PROPERT RECEIPT". Details infra.

28. Constructed within the Probable Cause Affidavit authored by Det. Gregory Lecarra is a quote of the conversation of the alleged illegal transaction inside Mr. Steer's vehicle;

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

"After entering the sources vehicle the source said to the Defendant here are the pills you wanted me to get for you` the Defendant replied `sweet thanks for getting them`.

- It's indisputable that the "pills" Det. Lecarra is referring to here in this quote are the (no. 227) pills contained in prescription bottle #642015. A prescription bottle alleged to have been obtained via a prescription fraudulently hand written in its entirety by Plaintiff (see pg 12 of 27 of Exhibit D). No reasonable, prudent person (let alone 9 highly trained and experienced special task force agents) would have believed, with the evidence in law enforcements possession that the Plaintiff entered Mr. Steers' vehicle with the intention to retrieve the pills contained in prescription bottle #642015.
- It's also indisputable that law enforcement coerced Mr. Steers to lure Plaintiff into his vehicle to place the described "pills" in Plaintiff's possession, knowing full well that plaintiff had no idea Mr. Steers was going to conspire with law enforcement's illegal plan to falsely imprison Plaintiff and Detective Lecarra would (in a pre-meditated fashion) fabricate this quote.

29. The highest ranking officer present that evening was Sgt. George Anthony who was present during the taking of Mr. Steer's knowingly perjured testimony on the evening of 3/24/2009. Importantly, Sgt. George Anthony fabricated a sworn Affidavit corroborating the known fabrications contained in Det. Lecarra's probable cause affidavit known to be fabricated, details infra. (SEE Exhibit G).

30. Exhibit G is a copy of a motion filed by Defense Attorney James Lewis based on new evidence which states at 2 #4;

   4. Informant William Steers spoke by phone with the undersigned attorney on 2 occasion and indicated that the police had forced him to set Todd Watson and that Todd Watson was not aware when he entered Mr. Steer's truck that Mr. Steers was going to give him oxycodone pills.

   -Despite every single piece of actual factual evidence presented in the State's own discovery proving Mr. Steers confession even without it, co- conspirator Judge Kenneth Gillespie flat out refused to allow a truth seeking evidentiary hearing and approved the unconscionable, illegal plea agreement whereby the Plaintiff was extorted into accepting a 6 year false imprisonment term, or his knowingly innocent senior citizen mother "Carol Gould" was going to be arrested for a first degree felony "tampering' crime in fact committed by conspiring State actors.( See Exhibit L at 3 #18), details infra.

31. Law Enforcement had in their possession prior to Defendants 3/24/ 09 arrest a pill bottle containing 77 of 100 prescribed pills filled earlier in the day of 3/24/09 at Chronic Care Pharmacy to William Steers. This amount of pills, if illegally placed on Plaintiff the night of his arrest (as was prescription bottle #642015), would only have placed a 15 year minimum mandatory charge and a 100,000.00 dollar bond on Plaintiff (see Exhibit C at 2 drug item #3)  This amount of intentionally induced tyranny upon Plaintiff was not good enough for law enforcement, who conspired with Prescription Pad Pharmacy owner Dr. Chris Osborne to illegally re-fill prescription bottle #642015 (that was empty when law enforcement first encountered Mr. Steers on 3/24/09) with # 227 pills and fabricate a sign in log alleging Mr. Steers filled prescription bottle #642015 on 3/24/09 not 3/13/09, the date it was actually filled (see Exhibit L). In return Dr. Osborne was not prosecuted for illegally compounding oxycodone medications at the time.

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

- The amount of drugs (# 227 pills) contained in prescription bottle #642015 placed a 25 year minimum mandatory charge and a bond of 500,000.00. Much more appropriate numbers for conspiring actors wanting to make certain Plaintiff remained in jail while fighting his case.

32. Plaintiff, is well aware of the Heck's hurdle which at first glance instant complaint does not overcome, however the case at hand presents factual circumstances of first impressions.

- As a continued effort of co-conspirators to conceal their heinous criminal conducts and Constitutional rights violations the Plaintiff was re-sentenced for the same crime the day prior to his scheduled release from his original 6 year false imprisonment term to an enhanced 30 year false imprisonment term. Details infra.

- Aforementioned enhancement was overturned by the 4thh DCA (see case No. 4D14-4394 Exhibit G-1).

- This reversal clearly opens the door for a lawsuit in accordance with the Hecks Doctrine for Plaintiffs re-sentence to be attacked via 1983.

- Soon after Plaintiff's 3/10/2017 release from prison he filed a 404 page newly discovered evidence motion attacking the validity of his original sentence on 4/12/2017 (see Exhibit J at 6 of 27).

- The crux of Plaintiff's newly discovered evidence motion is a conversation the Plaintiff had with the State's informant William Steer's (subsequent to his illegal resentence) via a legal call orchestrated by Plaintiff's private investigator Denise Rock. During this conversation Mr. Steer's gave horrifying, truthful information as to what occurred subsequent to law enforcement discovering he came forward and confessed to Plaintiffs attorney that police "forced" him to participate in their pre-meditated conspiracy to falsely imprison Plaintiff. Mr. Steer's stated subsequent to law enforcement discovering his confession they came back "40 deep" and threatened that they could still arrest and prosecute him for the drugs he had in his possession on 3/24/09.

- Mr. Steer's went onto explain, police were making up lies as they went along. Originally being told to explain in his second taking of "forced" perjured testimony (see Exhibit K) that Plaintiff had someone leave 10,000.00 dollars on his doorstep, for the purpose of having Steers to give false information to Attorney James Lewis. Law Enforcement changed that particular lie to have Mr. Steer's state people he barely knew approached him and advised him he would be paid 10,000.00 in the future if he were to give perjured testimony. Mr. Steers also shared the recording device that in fact recorded the conversation inside of his vehicle that would have exonerated Plaintiff was located in the visor area above his head, and subsequent to the overhearing of the recorded conversation (realizing police could not spin what was said into their lies) police "ripped the recorder out and destroyed it right in front of me". The second taking of knowingly false testimony performed by Steers (Exhibit K) makes an utter mockery of the U.S. Criminal Justice System.

-A Mr. David Becker was also coerced to perform knowingly perjured testimony (SEE Exhibit K-A)

- It's important to note that none of the conspiring State actors had a care in the world of facing consequence because they knew the presiding Judge Kenneth Gillespie was also a co-conspirator and would never allow the truth to be revealed.

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

- To this day Plaintiff's newly discovered evidence motion remains intentionally languishing (over 25 months subsequent to it being filed) because the presiding judge is well aware of the fact that if he/she ordered the State to Respond to Plaintiff's newly discovered evidence motion the State would be responding to their very own ongoing spree of crime and constitutional rights violations.

- These are indisputable facts that overcome the Heck's hurdle because the Plaintiff is out of jail, has no writ of habeas possibility and he has no possibility of relief in the 17th judicial circuit to attack his original conviction due to an ongoing conspiracy to conceal the truths of Plaintiff's innocence.

THE Eleventh circuit "has not yet weighed in" on the issue of "whether Heck bars 1983 suits by plaintiffs who are not in custody and thus for whom habeas relief is not available" Vickers v. Donahue, 137 Fed. Appx. 285, 289 (11th Cir. 2005) Under Plaintiff's current circumstances he is intentionally being prevented from seeking a remedy to overturn his conviction.

WHEREFORE, Plaintiff, Todd E. Watson, demands judgment against Defendant's, Lecarra, Schwartz, Romero, Anthony for compensatory damages for compensatory damages, physical pain and suffering, mental and emotional distress, Impairment of reputation, personal humiliation and all other relief available as are reasonable for the circumstances. Plaintiff hereby demands a trial by jury on all issue's so triable.

COUNT II CONSPIRACY-DEPRIVATION OF CONSTITUTIONAL RIGHTS UNDER 42 U.S.C. 1983- Defendants in conspiracy are as follows; Lamberti, Isreal, Tony, Schwartz, Lecarra, Anthony, McElhaney, Romero, Kogan, Kessling, Gordon, Wesolowski, Fernandez, Cathcart, Kessling, Satz, Neuner, Rood, Finkelstein, Curtis, Long, Koeing, Gillespie,Perlman, Haimes, Levenson, Merrigan, Weinstein, Happ, Digiaimo, Rock, Steers, Aiello, Stella, Osborne, Labarga, Rundle, Von Zamft, Penn, Martinez, Carrazana, Gotera, Alexis.

34. Plaintiff re-alleges and re-avers paragraphs and sub paragraphs, 1 - 33 above as if re-stated herein.

35. In short and in brief summary of previous claim, acting on false information, in the zeal to prosecute the owner of a pain clinic, and in the hopes the ends would justify the means, on 3/24/09 conspiring actors;

   - "Forced" informant William Steers to perform knowingly perjured testimony.

   - Destroyed/wiped the recording contained within digital recorder #100118958 that exonerates Plaintiff for his trafficking case.

   - Concocted a conscience shocking pre-meditated conspiracy to falsely arrest/imprison Plaintiff.

   - Intentionally did not prosecute a plethora of very serious felony crimes.

   - Conspired with Prescription Pad Pharmacy owner Dr. Chris Osborne to illegally re-fill prescription bottle #642015 and fabricate sign in log, in exchange for not being prosecuted for illegally compounding pills at the time.

36. Plaintiff hired Defense Attorney C. Craig Stella to represent his then fiancé Stephanie Romanski to represent her for her January 2009 arrest. Unbeknownst to Plaintiff Mr. Stella conspired with State actors (in particular A.S.A. Denise Neuner) to arrest Plaintiff prior to his 3/24/09 arrest.

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

- The day after Plaintiff's 3/24/09 arrest Mr. Stella showed up at Broward main jail unannounced and provided a copy of the probable cause affidavit relating to his case. Subsequent to review Plaintiff advised Mr. Stella "I never wrote any fraudulent prescriptions and I never said what Det. Lecarra quote's me as sating inside the vehicle get the tape and get me out of here".

- Mr. Stella replied if what I was saying was true he should have me out in a short amount of time, but pleaded with me to allow his friend Dena Aiello to run plaintiff's office. Stipulating that he would stop by the office at least twice a week and make certain every penny was accounted for. Under those terms Plaintiff agreed.

- What Plaintiff did not know at the time of his arrest was, Mr. Stella was disbarred in 2002 for drug addiction issues and he was in the midst of a relapse when he stipulated the terms of his representation of Plaintiff and his friend "Dena Aiello" was his drug dealer out on bond for several drug related crimes that Mr. Stella was representing her on. Both Mr. Stella and Dena Aiello conspired with the Broward County State Attorney's Office to falsely arrest plaintiff.

37. Mr. Stella fabricated a power of attorney, cutting and pasting Plaintiff's signature onto the forgery. This forgery prevented Plaintiff from being able to have police remove Ms. Aiello from his office due to her and Mr. Stella stealing all moneys from proceeds of business. (SEE Exhibit M)

38. Mr. Stella put forth a motion for speedy trial then the following day put forth a motion to withdraw as attorney.

- Plaintiff was completely unaware of Mr. Stella's motion to withdraw. Just prior to the hearing (in August of 2009) Mr. Stella sent a stand in attorney to explain to plaintiff that Mr. Stella was withdrawing due to lack of funds.  Plaintiff had given Mr. Stella 15,000.00 at that juncture (not taking into account the hundreds of thousands of dollars, he and his drug dealer friend Dena Aiello stole from Plaintiff's office). Presiding Judge Gold mentioned he had never seen an attorney file for speedy then file to withdraw. The result of the hearing was Plaintiff fired "Stoner Stella" and hired the public Defender's office. A trial date was set but the assistant public defender illegally took it back stating she was not ready.

_ Importantly, Mr. Stella intentionally never subpoena the medical files of Mr. Steers at the named Doctor's offices presenting exculpatory information that Mr. Steers did in fact see named Doctors as a legitimate patient and received legitimate prescriptions from, despite advising Plaintiff he did exactly that. Why would Mr. Stella want to assist his client (Plaintiff) prove his innocence, when he is receiving a large amount of money and illicit drugs from his drug dealer (Dena Aiello) he placed in Plaintiff's office, all at the instruction and direction of the Broward County State Attorney's Office.

39. The day after the hearing for speedy/withdrawal the Plaintiff had his ex-wife Kelly Watson go to the office with the police to have Dena removed. Ms. Watson was unsuccessful due to the forged power of attorney in Dena's possession. Police advised plaintiff to construct a new power of attorney removing Ms. Aiello. Fearing being removed with a newly constructed POA, the day after Plaintiff attempted to have Dena removed she stole every single item from Plaintiff's office and moved to a new location. What Plaintiff did not know at the time was Ms. Aiello was "ordered" by A.SW.A. Denise Neuner to steal everything from Plaintiffs office. Details infra.

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

40. Since day one of Plaintiff's arrest conspiring state actors were listening to all of Plaintiff's jail house calls almost at real time. Attempting to make certain their career/freedom ending misconducts remained concealed (all at the expense of taxpayers of course).

41. The State having ordered Ms. Aiello to steal everything from Plaintiff (details infra), was able to induce exactly what conspirators wanted which was to place Plaintiff in a position to need to get out of jail to salvage his only source of income.

   - Plaintiff went prose in the trafficking case in hopes of expediting proving his innocence. However he continued to retain the representation of Cheryl Koeing for the specific purpose of retrieving the prescription from Chronic Care pharmacy that exonerated Plaintiff for his possession charge, case # 092404CF10A.

   - IT MUST BE NOTED THAT DENA AIELLO DESTROYED PLAINTIFF'S MEDICAL FILE STORED AT HIS OFFICE (THAT WOULD HAVE ALSO EXONERATED PLAINTIFF FOR HIS POSSESSION CHARGE) AT THE INSTRUCTION AND DIRECTION OF THE CONSPIRING ACTORS OF THE BROWARD COUNTY STATE ATTORNEY'S OFFICE.

42. Plaintiff hired standby/shadow counsel Gabriella Novo. Plaintiff was unaware at the time that Ms. Novo previously worked with Plaintiff's prosecutor Denise Neuner at the Broward County State Attorney's Office.

   -Ms. Novo approached Plaintiff with a substantial assistance deal offered by her friend A.S.A. Neuner. Plaintiff originally responded he wanted to "end all their careers for what they have done".

   -Ms. Novo was hired specifically to retrieve the medical files of Mr. William Steers from the Doctor's offices he allegedly never saw the Doctor as a legitimate patient, or received legitimate prescriptions from. In the alternative Ms. Novo intentionally never retrieved exculpatory files but persisted that the State was offering a great deal.

43. Needing to get out as soon as possible to attempt to salvage his business, Plaintiff agreed to meet with the State believing he could plead his innocence, specifically requesting Detectives Gregory Lecarra and William Schwartz not to be present.

   - During the initial substantial assistance meeting, Detectives Lecarra and Schwartz were present. Plaintiff attempted to plead his innocence asking A.S.A. Denise Neuner where was the tape recording of the conversation inside Steers truck that would exonerate Plaintiff- In response Neuner advised Plaintiff that a recording was never produced, then handed Plaintiff a copy of the sworn statement of Sgt. George Anthony corroborating the fabrications constructed by Det. Lecarra in his probable cause affidavit in regards to what was said inside Steers truck. This sworn statement was constructed for the purpose of this meeting in an attempt to thwart Plaintiff's efforts to continue to prove his innocence because the truths of his innocence simultaneously proves layers of official misconducts.

   - The deal that was offered to Plaintiff was to assist in convicting C.Craig Stella, Deana Aiello, and Vincent Colangello in return Plaintiff would receive probation. Neuner also promised Plaintiff would be released very soon-allowing Plaintiff the opportunity to attempt to restore his business.

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

- Importantly the State wanted Plaintiff to assist in the conviction of Dr. Marilee Glauser (who was known by the State to be experiencing alzheimers) and Dr. Glausers husband Sheldon Glauser, reasoning Mr. Glauser was exploiting his wife for money.

- Plaintiff responded that Dr. Glauser had only been working for Plaintiff for approximately a week prior to Plaintiffs arrest that she seemed fine to him and Plaintiff would not directly assist. Plaintiff did however agree to allow a registered informant by the name of Annie Cerrara to work in his office to assist the State with the convictions of Dr. Marilee Glauser and her husband.

****** ITS VERY IMPORTANT TO POINT OUT AT THIS JUNCTURE THAT THE STATE NEVER INTENDED TO ARREST DENA AIELLO WHO WAS AN INFORMANT FOR THE STATE FREELY HANDING OUT CASH KICKBACKS TO LAW ENFORCEMENT WHILE RUNNING PLAINTIFFS PAIN CLINIC, OR MR. C.CRAIG STELLA WHO HAD ASSISTED THE STATE WITH PLAINTIFFS ARREST—ALSO THE STATE WAS REQUIRED BY LAW TO INFORM THE FLORIDA HEALTH DEPARTMENT THAT DR. GLAUSER (WHO WAS PRESCRIBING LARGE AMOUNTS OF POWERFUL SCHEDULE 11 DRUGS) WAS EXPERIENCING ALZHEIMERS. ON PAGE 6 OF 6 OF DET. SCHWART'S SWORN INCIDENT REPORT HE MEMORIALIZES THAT MR. GLAUSER ADVISED HIM OF HIS WIFE'S ALZHEIMERS-THIS WAS ON 3/25/09. THE SINISTER INTEREST OF THE BROWARD COUNTY STATE ATTORNEY'S OFFICE TO SECURE CONVICTIONS OF THE GLAUSERS (A SINISTER INTEREST THAT OUTWEIGHED THE SAFETY OF THE GENERAL PUBLIC) CAUSED SEVERAL DEATHS. ONE IN PERTICULAR WAS JONATHON KYLE GRAHAM (SEE EXHIBIT N OBITUARY OF MR. GRAHAM). THE OTHERS OCCURRED WHILE A KNOWN DRUG ADDICT, DRUG DEALER, STATE'S INFORMANT DENA AIELLO WAS RUNNING PLAINTIFF'S MEDICAL OFFICE WITH COMPLETE IMPUNITY THANKS TO THE CASH KICKBACKS. DETAILS INFRA*****

44. Plaintiff was released 10/1/2009 under the tyrannical substantial assistance.

- Immediately subsequent to Plaintiffs release he went to his office to make a police report. Upon arrival the Plaintiff advised police of his circumstances that Dena Aiello stole everything from plaintiff's office while I was in jail. Plaintiff provided officer Tarala, Dena Aiello's phone number. Officer Tarala made contact with Ms. Aiello who advised him she would have Plaintiffs property "returned to him by tomorrow night" (see Exhibit O)

****** At this juncture the Plaintiff was not aware that, Ms. Aiello was "ordered to shut down the business by a state attorney who is investigating him so she did…" (SEE Exhibit O) What this means in plain English to any reasonable person with knowledge of the factual circumstances surrounding Plaintiff's case is Ms. Aiello was "ordered" to steal everything from Plaintiff's office by A.S.A. Denise Neuner who was Ms. Aiello's prosecutor during the time as an informant for the State (in regards to active drug trafficking cases) for the purpose of placing Plaintiff in a position to accept the offered substantial assistance deal/allowing Plaintiff the opportunity to salvage his business. IT MUST BE NOTED ALL THE INFORMATION GIVEN HEREIN IS ALL A MATTER OF COURT AND PUBLIC RECORD******

- Officer Tarala constructed in his original police report that Plaintiff had authorized the power of attorney allowing Ms. Aiello to run Plaintiffs office (see Exhibit O). The Plaintiff took the time to have this error corrected (see Exhibit O supplement report).

45. Plaintiff did not receive a copy of aforementioned police report for over a month because officer Tarala went on vacation and sick leave. Consequently when Ms. Aiello did not show up to return

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

Plaintiffs property as promised. Plaintiff, once again contacted police to advise them of such (the day officer Tarala made the report he advised Plaintiff if Ms. Aiello did not keep her word and return Plaintiff's property he would arrest her) unaware at the time that Ms. Aiello was "ordered" by A.S.A. Denise Neuner to steal everything from Plaintiff's office and had absolutely no intention or worries about not returning Plaintiff's property.

- An officer Salsberry responded to Plaintiff's call in regards to Ms. Aiello not returning Plaintiff's property (see Exhibit O supplement report). Officer Salsberry advised Plaintiff "I don't know what's going on here but my supervisor advised me that the state attorney's office called him and told him that any or all reports in this case are to be handled as a civil matter" he then advised Plaintiff "watch out someone doesn't like you". Ms. Aiello never returned one shred of Plaintiff's property.

46-A- While awaiting the police to show up at plaintiff's medical office to make the report of C.Craig Stella and Dena Aiello stealing all properties from his office (on 10/1/2009), he called Mr. Stella in regards to the power of attorney he forged. Upon answering plaintiff asked Mr. Stella if he had the original of the forged power of attorney in his possession (which plaintiff knew did in fact not exist), in which he responded "of course." Immediately subsequent to officer Tarala finishing his investigation at plaintiff's medical office, plaintiff raced to Mr. Stella's office. Upon arrival Mr. Stella handed plaintiff a copy of the forgery. The plaintiff responded "where's the original?" Mr. Stella who was showing blatant signs of drug use responded "oh I have made so many copies of this article I have no idea where the original is."

- Mr. Stella had not a care in the world, that the document he just handed his former client, was a forgery (used to steal hundreds of thousands of dollars and obtain large amounts of illegal prescription narcotics used to support Mr. Stella's well known drug addiction) because it was forged at the instruction and direction of the Broward County State Attorney's office.

- Subsequent to leaving "Stoner Stella" office plaintiff reviewed the forged document. Surrounding the signature was a crystal clear black outline around plaintiff's signature proving a cut and paste job done. Upon further review the plaintiff recognized the cut and paste was in fact a signature of plaintiff's however, the signature had some very distinct differences from plaintiff's normal signature. The defendant then remembered that he signed an agreement for a life skills program while in hand cuff's in open court. Plaintiff then simulated his signature as if he was hand cuffed and the distinct differences in plaintiff's signature were revealed.

- The record reveals that on several occasions the plaintiff requested a copy of the life skills agreement he signed while in open court that was in fact filed with the clerk's office. In yet another layer of intentional criminal obstructions of justice all letter's addressed to the clerk's office (in particular then Clerk Howard Forman) where intentionally not responded to.

46. Despite Ms. Aiello not returning Plaintiffs property he was able to re-open his office on or about October 10th, 2009, under the oppression of the substantial assistance agreement.

-As requested the State's registered informant, Annie Cerrara was working at the Plaintiff's office as a receptionist/front desk personnel. Doctor Glauser was working as the only Doctor at Plaintiff's office as per the State's instruction and direction.

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

- On or about October 17th 2009, a 23 year old young man named Jonathon Kyle Graham visited Plaintiff's medical office with the intention to be seen as a patient. Mr. Graham advised the states informant Annie Cerrara that he had a fake M.R.I. and fake identification, however he would give her 100.00 dollars in exchange for allowing his fabricated information to pass thus see Doctor Glauser as a patient. Annie accepted the illegal trade off.

- The following morning office manager Shequannie Cooper advised Plaintiff that Jonathon's friends contacted her explaining that Jonathon died from an overdose due to the medications prescribed by Dr. Glauser (the bottle Dr. Glauser prescribed was found next to Jonathons body), that he was from Naples Florida and he came from a good family that were devastated at the loss of Jonathon. Shequannie also advised Plaintiff about the illegal trade off between Annie and Jonathon.

- Due to the substantial assistance arrangement, Plaintiff was obligated to contact Det. Schwartz and give the information of how Annie accepted an illegal trade off that led to Jonathon's death. Which the Plaintiff did later that same day to which Det. Schwartz responded "I already knew about his death I will take care of it"

- The law in regards to the investigation of the death of someone caused by an overdose from prescriptions whose origins are known (in regards to a doctor's office prescribing the medications) is to speak with the prescribing Doctor, the owner and examine the patient file. None of this was ever done.

46. On October 21st at 1:06 a.m. (just 3 days subsequent to Jonathon's overdose death), the Plaintiff's medical office was firebombed. (SEE Exhibit P)

- On November 12th, 2009 Plaintiff met with a Det. Kogan in regards to the firebombing of his medical clinic and advised;

    (a) That the only person with motive to firebomb Plaintiff's office was Dena Aiello who had recently been arrested and believed that Plaintiff was the individual who provided law enforcement information leading to her arrest.

    (b) That Deana Aiello was visited by her lover Isabell Secu just hours prior to the firebombing, at Paul Rein Broward County jail, where they in fact record the visit conversations.

    (c) If Det. Kogan were to retrieve the recorded visit the Plaintiff was very confidant Det. Kogan, would be listening to the pre-meditated conspiracy to firebomb Plaintiff's medical office.

- The police report (constructed by Det. Kogan) makes indisputable that Dena Aiello had her Lover Isabella Secu firebomb Plaintiff's medical office and that the investigative officer, Det. Kogan conspired to make certain that no one was arrested for this first degree felony punishable by life with no statute of limitations despite his knowledge that the perpetrators of the crime were;

1- Deana Aiello

2- Isabella Secu

3- Donald Aiello (Dena Aiello's brother).

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

- The police report of the 10/21/2009 firebombing of plaintiff's medical office speaks for itself. Rarely if ever has a police report so illustrated a cover up of a crime within the police report itself. Plaintiff will point out one particular aspect of the insanity;

*** Isabella Secu, who is the person primarily responsible for the firebombing of plaintiff's medical office. Is in fact a foreigner, who is captured on a recorded phone call by co-conspirator investigating officers to be "bragging and laughing" about executing the act of terrorism, upon a U.S. Citizen's property. Then when Det. Kogan merely mentions he might need her to give testimony to the fact that she is guilty as sin of executing the firebombing of plaintiff's medical office, Isabella responds that "she would flee to her home country of Romania if needed." *** Therein lies the tragedy. How would the Broward County State Attorney's office be able to conduct such unspeakable injustices without assets like Isabella Secu? A foreigner from Romania. The mere thought of such a thing must have enraged State Attorney Michael Satz. Consequently, Michael Satz bestowed complete immunity on all involved.

47. The goal at this point for the State Attorney's office was- at all cost Plaintiff must have his substantial assistance agreement violated as soon as possible.

- The Plaintiff did not receive a copy of the police report regarding the firebombing of his office until the day of his 5/11/11 sentencing details infra.

48. The Plaintiff finally received a copy of the police report regarding Dena Aiello stealing everything from his office (see Exhibit O) whereby he discovered that the reason Dena, had not a care in the world that she had not returned any of Plaintiff's property to him, is that she stole all of Plaintiff's property, because A.S.A Denise Neuner "ordered" Dena to steal everything.

- Outraged at what Plaintiff discovered within the police report, he demanded a meeting with A.S.A Denise Neuner, and Det. William Schwartz to find out what was really going on.

- In response to being confronted by Plaintiff in regards to the police report (exhibit O) Ms. Neuner denied that she was the prosecutor handling Ms. Aiello's case. Yet another intentional, blatant lie. When asked what was going on with the investigation into Jonathon's death (when were law enforcement going to be interviewing Dr. Glauser, and Plaintiff) Det. Schwartz responded don't worry about it its being taken care of."

49. The Plaintiff decided to take the state's informant Annie Carrera to dinner to verify what Plaintiff already knew in regards to the death of Jonathon.

- A stipulation in the state's substantial agreement was that Plaintiff not have contact with his then fiancé Stephanie Romanski. The sinister scheme the state concocted to violate Plaintiff's s/a agreement is as follows;

(a) During dinner Annie received a phone call. Subsequent to answering the phone call Annie advised Plaintiff "here it's an old friend" then proceeded to hand Plaintiff the phone. On the other end was Stephanie Romanski whom Plaintiff had been engaged to and had not spoken to for 6 months. The Plaintiff, not being aware it was going to be Stephanie and unaware the phone call was set up by the state attorney's office, spoke to Stephanie for a few minutes explaining he loved and missed her and hoped everything would be over soon so they could get back together and get married.

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

(b) Unbeknownst to Plaintiff Annie was wearing a wire during the conversation he had with Stephanie. The following day the Plaintiff was arrested for talking to Stephanie.

50. Subsequent to being arrested Plaintiff, once again contacted Gabriella Novo who was shadow counsel during the s/a deal.

- It was at this juncture that Plaintiff started learning the law.

51. Plaintiff decided to hire Defense Attorney James Lewis to represent him during pendency for the s/a violation.

- Several motions were filed to vacate Plaintiff's plea in regards to "misconduct." As previously discussed since the presiding Judge Kenneth Gillespie was a co-conspirator and the most recent champion to the cause of heinous acts of judicial corruption swarming Plaintiff's case, the Plaintiff had a better chance of winning the Florida Lottery while in jail without purchasing a ticket, than he did having Judge Kenneth Gillespie rule on Plaintiff's motions according to the U.S. constitution, statutes, precedent case law and most definitely any form of human decency.

_ Despite all the manifest evidence proving Plaintiff's innocence Judge Kenneth Gillespie not only denied all Plaintiffs motions for a truth seeking hearing (even the motion where the state's own informant William Glenn Steers confessed to an officer of the court that police forced him to lie and the Plaintiff is innocent), he approved the most illegal, unconscionable plea agreement ever constructed in the history of this great nation.

- The details to all the fabrications constructed within A.S.A. Denise Neuner's motions would take hundreds of pages. And will be constructed during future pleadings. However, for purposes of instant civil suit Plaintiff will later detail one of Neuner's most egregious fabrications.

52. Subsequent to the State's informant giving truthful information to Defense Attorney James Lewis, that police had forced him to submit to their pre-meditated conspiracy to falsely imprison Plaintiff (see Exhibit H at 2 #4), the State had to come up with something to give to the presiding judge Gillespie to offset such explosive information. Since Judge Kenneth Gillespie was a conspirator it could have been almost anything.

- On taxpayer dollars members of BSO listened to every one of Plaintiff's phone calls trying to come up with something to give co-conspirator Judge Kenneth Gillespie.

- During review of Plaintiff's phone calls the state discovered that the Plaintiff loaned a friend of his 400.00 dollars. The state (with nowhere else to go) spun this loan into some sort of a conspiracy between the Plaintiff and his mother "Carol Gould" to give that money to the states informant. Alleging the 400.00 dollars was why Mr. Steers confessed to Defense Attorney James Lewis (see Exhibit Q State's written response to the Defendant's fourth motion to vacate plea based on new evidence)

- It did not matter to presiding Judge Kenneth Gillespie that the State's theory made absolutely no common sense.

- The loan was proven through inmate banking records to have been paid back prior to Steers confession to Lewis.

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

-The State never contacted the very person(s) responsible to execute this alleged 1st degree felony tampering crime- Jose Gonzalez Sr. and Jr.

- The 400.00 is never mentioned in Mr. Steer's second taking of "forced" knowingly perjured sworn statement.-ETC. ETC. ETC.

- What does make perfect sense and is corroborated and substantiated with an overwhelming amount of clear and convincing evidence is, conspiring state, actors never willing to face the consequences of their own evil misconducts, concocted this theory in an effort to conceal the truth.

The State's unprecedented misconducts went so far as to retrieve a picture of a knowingly innocent senior citizen "Carol Gould" making the 400.00deposit/loan into Mr. Gonzalez's bank account. (SEE Exhibit Q) Constructed within picture is the following wording;

THE PUBLIC OR NON-PUBLIC USE OR DISTRIBUTION OF THE IMAGE AND/OR PHOTOGRAPH PROVIDED IS STRICTLY PROHIBITED WITHOUT THE PRIOR WRITTEN AUTHORIZATION OF JPMORGAN CHASE GLOBAL SECURITY AND INVESTIGATIONS.

- Being "strictly prohibited" to use this photograph in any form of public forum meant absolutely nothing to A.S.A. Denise Neuner who included this picture as an Exhibit within Exhibit Q of instant complaint.

53. The bottom line at this critical stage of the proceedings is that someone was not telling the truth, there's absolutely no middle ground. Either, the Plaintiff and his mother conspired to tamper with witness Steers or the involved State actors were in the midst of an unprecedented ongoing conspiracy of actual felony crimes and constitutional rights violations. Despite the overwhelming amount of evidence proving it was not Plaintiff and his mother who conspired to tamper with Mr. Steers there was never a truth seeking hearing.

- Plaintiff included within exhibit Q several other motions constructed by A.S.A. Denise Neuner. Everyone polluted with known fabrications.

54. Judge Gillespie having denied all motions a sentencing hearing was set for 5/11/11.

- Plaintiff requested his mother to pick up the police report depicting how A.S.A Denise Neuner "ordered" Dena Aiello to steal all Plaintiff's property from his office.

- Immediately after being seated in the court room for the 5/11/11 sentencing hearing Defense Attorney Robert Resnick approached Plaintiff and advised him "YOU GOT FUCKED IF YOU DON'T ACCEPT THE OFFERED DEAL YOUR MOTHER IS GOING TO BE ARRESTED RIGHT HERE IN THE COURT ROOM AND THE JUDGE IS GOING TO GIVE YOU 35 YEARS", Mr. Resnick then proceeded to place the police report the Plaintiff's mother picked up and the State's offered plea agreement on the desk in front of Plaintiff.

- Since the police report was on top, the Plaintiff instantly realized it was not the report of the theft of Plaintiff's medical office. It took only a couple of minutes for Plaintiff to realize the police report was of the 10/21/2009 firebombing of his medical office and that Plaintiff's prediction to Det. Kogan was correct that Dena and Isabella conspired to firebomb Plaintiff's medical office-see Exhibit P.

- The illegal, unconscionable plea agreement placed in front of Plaintiff memorializes that if the Plaintiff dares attempt to expose the utter infestation of judicial misconducts surrounding his case by

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

"fil[ing] any further motions, appeals, complaints, or litigation for any reason on any grounds, in this or any other court of law, prose or of counsel" Plaintiff would be "AUTOMATICALLY" resentenced from a 6year false imprisonment term to a 35 year false imprisonment term and Plaintiff's mother "Carol Gould" would be prosecuted for a 1st degree felony "tampering" crime in fact committed by the very judicial officers present in the court room during the 5/11/11 sentencing hearing-DET.WILLIAM SCHWARTZ, DET. GREGORY LECARRA, AND A.S.A. DENISE NEUNER. (SEE Exhibit I at 3 # 18)

QUESTION: IF YOU WERE AN ASSISTANT STATE ATTORNEY CONSTRUCTING A PLEA AGREEMENT FOR THE PRIMARY PURPOSE OF COVERING UP A CONSPIRACY OF CRIMINAL CONDUCTS AND CONSTITUTIONAL RIGHTS VIOLATIONS PARTICIPATED IN BY YOURSELF AND MANY FELLOW JUDICIAL OFFICERS, HOW WOULD YOU CONSTRUCT SUCH A PLEA AGREEMENT?

ANSWER: WORD FOR WORD, LINE BY LINE, PARAGRAPH BY PARAGRAPH, EXACTLY THE WAY A.S.A. DENISE NEUNER CONSTRUCTED PLAINTIFF'S PLEA AGREEMENT.

55. Plaintiff was not going to allow his mother to be arrested then subjected to god only knows what other horrifying, inhumane injustices the State would put forth in furtherance of continuing to conspire to conceal the truths surrounding Plaintiff's case (innocence). Consequently the Plaintiff signed the plea agreement, FOR A 6 YEAR PRISON SENTENCE, believing he would be able to fight another day.

56. Plaintiff must regress a bit to give pertinent information to A.S.A Denise Neuner's misconducts outside of her duties of a prosecutor, but inside the conspiracy to criminally obstruct justice.

- As previously mentioned the State was listening to all of Plaintiffs jail house phone calls and discovered Plaintiffs ex-wife Kelly Watson was assisting Plaintiff to prove his innocence. Involved actors overheard Ms. Watson tell Plaintiff she was going to go down to the Florida key's with their children over the week end. Kelly forgot to inform her misdemeanor probation officer, thus a violation of her MISDEMEANOR probation. Consequently special prosecutor Denise Neuner who only handles 15 year minimum mandatory and above scheduled an "emergency" hearing which resulted in Ms. Neuner taking over as Ms. Watson's prosecutor, adding a year of probation and stipulating that if she assisted Plaintiff to make phone calls such assistance would be considered a violation of her probation. IT'S IMPORTANT TO REMIND THAT ALL THESE ALLEGATIONS ARE MEMORIALIZED AS A MATTER OF COURT AND PUBLIC RECORD.

57. Upon entering the Department of Corrections, during the initial strip search, corrections officers had no shame in showing they knew who plaintiff was and were willing to do as requested.

- Several corrections officers surrounded plaintiff while he was standing naked and demanded plaintiff throw away all his paperwork- plaintiff replied "but that's my legal work" they replied "is the first thing that's going to happen to you in DOC is getting your ass beat for disobeying a verbal order, throw that shit away." Plaintiff had no other viable alternative but to comply.

58. While in prison plaintiff had every intention of researching the law, believing there is no way, in any form of ethical justice system that the types of official misconducts induced upon plaintiff and his family would be an accepted practice.

- Plaintiff approached the Lieutenant where he was being housed advising him of all the intentionally unprosecuted very serious crimes surrounding his case. Unfortunately the decision the

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

DOC made was, to place Plaintiff in confinement while the Inspectors office conducted an investigation. The Plaintiff remained in confinement for approximately 40 days, never being advised the result of the investigation.

59. Not long after being released from confinement and through diligent research the plaintiff discovered the only vehicle allowing the enforcement of the State's plea agreement (to re-invoke jurisdiction upon the court) was through Florida Rules of Criminal Procedure 3.170 (g). If in fact the State were to file such a motion and was granted, the result would be a trial within 90 days;

When a plea and sentence is vacated pursuant to this rule, the cause shall be set for trial within 90

Of the order vacating the plea and sentence. SEE FL. R. Cr. P. Rule 3.170 (g) (2) (D)

- The plaintiff was absolutely ecstatic to learn that after all the efforts put forth by conspirators to conceal all their official misconducts surrounding plaintiff's case, his plea agreement itself would demand the very truth seeking "TRIAL" the State never wanted.
- The record reflects the plaintiff filed over 40 motions, complaints and or litigation (SEE Exhibit J docket) to no avail. The State was not going to allow plaintiff the opportunity to place truth and justice upon their ongoing conspiracy by initiating such via the appropriate 3.170 (g) remedy.
- Becoming very angry with the State's continued, callous disregard for any form of justice by not filing the appropriate motion to vacate plea and sentence in accordance with Rule 3.170 (g) the plaintiff constructed a plethora of letters as a matter of court and public record explaining plaintiff was going to do everything in his power to make certain all conspirators are prosecuted to the fullest extent of the law, immediately upon release.
- The targets of these constitutionally protected letters were Judge Kenneth Gillespie, Judge David Haimes, Judge Peter Weinstein, Judge Sandra Perlman, State Attorney Michael Satz, A.S.A. Denise Neuner

60. One of plaintiff's intentional violations attempting to expose the heinous, atrocious, cruel misconducts subsumed within his case (which are in fact matters of great public importance) was a 3.850 motion for post, conviction relief filed 10/4/2012. The assigned Judge, Sandra Perlman ordered the State to respond to plaintiff's motion within 45 days on 10/8/2012.

- Knowing full well the State would never respond to their very own ongoing conspiracy of public corruption, plaintiff sent presiding Judge Sandra Perlman several pleadings as a matter of court and public record explaining his factual circumstances and the State was never going to respond to their very own ongoing conspiracy.

- It must be presumed that Judge Perlman was contacted by conspirator(s) because despite the overwhelming amount of evidence contained in plaintiffs 3.850 proving all of plaintiff's allegations and plaintiffs plea's to sanction the State for not responding to the Judge Perlman's order, Judge Perlman flat out refused take any action whatsoever towards the State's intentional refusal to respond.

- JUDGE PERLMAN DOES NOT HAVE JURISDICTION TO INTENTIONALLY NOT INVOKE HER DUTY AS PRESIDING JUDGE, ALLOWING THS STATE NOT TO RESPOND TO THEIR VERY OWN CRIME SPREE. JUDGE PERLMAN WAS IN FACT AND BY DEFINITION CRIMINALLY OBSTRUCTING JUSTICE, BY DOING SO.

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

61. Undeterred in his efforts of truth and justice plaintiff wrote several other sitting Judges within the 17th circuit of Broward County Florida explaining the facts of plaintiff's current circumstances. Finally, Judge Susan Lebow responded to plaintiff's letter of record sent to her, advising that Judge Rosenthal was assigned as the new presiding Judge and she filed an order on 8/9/2013 (10 months subsequent to the 45 day order) demanding the State to respond to plaintiff's 3.850 motion within 10 days.

-Judge Rosenthal not only denied plaintiffs 3.850 motion (a denial filled with nonsensical babble) at the request of the State she put forth a tyrannical order for the plaintiff to respond as to why he should not be barred from future filings or why he shouldn't be punished for filing the previous filings (containing undisputed facts about an ongoing conspiracy of official misconducts) See Exhibit R.

- Not long after Judge Rosenthal constructed denial, she smashed into a "parked police cruiser" at "8:00 a.m." in the parking lot of the Broward County Courthouse, while under the influence of drugs and alcohol (getting ready to enter a court room for the purpose of ruling on the liberties of American citizens). FEAR NOT!!!,since Judge Rosenthal is an integral aspect of concealing the infestation of corruption inherent in plaintiff's case, Judge Rosenthal was able to find a Doctor to explain he over prescribed Judge Rosenthal. ALL WAS THUS FORGIVEN!!!

- Importantly Plaintiff (through his diligent efforts of truth and justice0 was able to retrieve enough factual evidence to send a brief to the F.B.I. that (in any form of ethical criminal justice system) should have initiated an investigation. (SEE Exhibit R-1)

62. In response to Judge Rosenthal's order requesting plaintiff to respond as to why he should not be severely punished for exercising his constitutionally protected rights and duty as an American citizen to report public corruption-plaintiff explained;

"In any form of a civilized society a court must not be allowed to comprehend (admit) such atrocities to be true then turn around and allege defendants efforts to expose these matters of great public importance to be Malicious and or frivolous"

- Judge Jeffrey Levenson (who took over plaintiffs case from Judge Rosenthal) had absolutely no shame in admitting the 17th judicial circuit was anything but "civilized" when he denied plaintiffs response, barring plaintiff from future filings explaining truthful information put forth as a matter of court and public record presenting undisputed, indisputable facts of an ongoing conspiracy of evil government misconducts was "malicious". (See Exhibit S). Importantly a hearing was held inside Judge Levensons chambers to discuss plaintiff's circumstances on 05/06/2014 prior to Judge Levensons ruling to bar plaintiff from future filings.
- *** NOTE- It must be nice to be in control of the investigation, prosecution and punishment of your own criminal practices WHILE SIMULTANEOUSLY BEING ABLE TO PUNISH A U.S. CITIZEN FOR ATTEMPTING TO EXPOSE YOUR CRIMES.

63. It must be noted that the 4th DCA barred plaintiff from filing any future pleadings for his filing of the appropriate remedy for the state not responding to their order writ of mandamus (SEE Exhibit T). Yet another never before. The notice of appeal plaintiff filed with the 4th DCA for the denial of 3.850 motion was "DISMISSED" due to plaintiff being barred.

64. One good outcome of the plaintiff's filing of notice of appeal was the Broward County Clerk's office sent a portion of the record that plaintiff had never seen before or was forcibly thrown away.

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

- Within the record sent to plaintiff was a copy of the State's motion violating his substantial assistance agreement (a motion the plaintiff had never seen before SEE Exhibit U).

- On page 8 of 9 is a lengthy paragraph giving detail to an alleged investigation performed at plaintiff's medical office on 10/16/09 by an investigator from the Florida Health Department by the name of Paul Randall.

- This alleged investigation in fact never occurred. The Plaintiff is very cognizant that A.S.A. Denise Neuner fabricates official documents involving plaintiff's case as if it were some sort of leisurely sport however,(it goes without saying these are crimes protected by State Attorney Michael Satz himself) plaintiff was quite perplexed as to why Ms. Neuner would construct this particular fabrication. Then it hit plaintiff like a ton of bricks- THE DEATH OF JONATHON KYLE GRAHAM DUE TO THE MEDICATIONS PRESCRIBED BY DR. MARILEE GLAUSER KNOWN TO BE EXPERIENCING THE "ON-SET OF ALZHEIMERS"

- Ms. Neuner constructed this particular fabrication to present the lie that the state involved the health department prior to Jonathon's death.

- Importantly with everything that had occurred in between Jonathon's death and discovering this particular fabrication and the fact plaintiff had only heard Jonathon's name a few times he forgot Jonathon's name. However the record reflects that once plaintiff unraveled this particular layer of criminal practice he did everything in his power to expose such, knowing full well the parents of Jonathon had not the slightest clue the truths of how and why their 23 year old son died.

- Time and time and time again the plaintiff explained to investigative authorities (and all persons involved in plaintiffs criminal case) the facts of Jonathon's death, to no avail. The good old boy system throughout the State of Florida runs deep and has been flourishing for decades. The primary culprit is Broward County State Attorney Michael Satz who has been wielding his criminal behaviors for over forty years. Details to how plaintiff was finally able to retrieve Jonathon's name infra. All involved conspirators would take any action necessary to prevent plaintiff from getting out, allowing him the freedom/resources to investigate/expose these evil, unchartered, misconduct's.

65. Going forward for a moment, Subsequent to being released from prison plaintiff discovered that the Florida health department (in particular general counsel Toby Schultz) conspired with the State attorney's office to conceal the truths of Jonathon's death. Details infra.

66. Due to the filings of plaintiff sent to the Broward County criminal justice system exercising his constitutionally protected rights to expose public corruption/direct access to the courts DOC placed plaintiff in confinement on 11 (eleven) separate occasions (SEE Exhibit V) despite not having the authority to do so. The only remedy allowing DOC to punish Florida State inmate's for writing to the courts is through Florida Statute 944.279. Plaintiff gave DOC constructive notification of these facts on many separate occasions.

67. During plaintiff's original 6 year false imprisonment term, being very upset the Broward County State Attorney's office (in particular State Attorney Michael Satz) was making the conscious decision not to violate/enforce the terms of plaintiff's plea agreement because it would induce a truth seeking trial "within 90 days" unleashed an onslaught of letters to all involved conspirators, letting them know as soon as plaintiff was released from his 6 year false imprisonment term, he was going to do everything in his power to make certain all involved are prosecuted to the fullest extent of the law. In particular

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

plaintiff sent letters to Judges Weinstein, Gillespie, Haimes, Rosenthal and Levenson, State Attorney Michael Satz, ASAIC John Gallagher, and A.S.A. Denise Neuner.

68. On 10/28/2014 (with only 14 days remaining on plaintiffs 6 year false imprisonment term) while housed at Lake Butler Correctional Institute, at 3: am a DOC officer knocked on plaintiff's bed and said "Watson pack it up you have outside court". It's not possible for anyone who has not had to physically go through what plaintiff and his family has had to endure, to know the all-consuming feeling that plaintiff felt, when he heard those words, knowing full well the involved corrupt judicial officers were going to once again tell any lie, violate any constitutional right, and or commit any crimes necessary, purposing preventing, at all cost, from having to face the consequences of their own pure evil, pre-meditated crimes/constitutional rights violations.

69. Conspirator Judge Peter Weinstein, on 10/16/2014 (WITHOUT ANY FORM OF JURISDICTION TO DO SO) wrote an order for an evidentiary hearing for the State's never before "EMERGENCY" motion with full knowledge he had absolutely no jurisdiction to approve such a motion (SEE Exhibit W). Also included in Exhibit W are just a few of the correspondences plaintiff sent to Judge Weinstein prior to him constructing his knowingly illegal never before order to conduct a hearing on 10/30/2014.

   - Importantly in Judge Weinstein's order he state's the reason for plaintiff to be transported was "resentencing" knowing full well it was pre-determined that plaintiff was going to be resentenced.

   - Every bit as important are the correspondences included in Exhibit W from plaintiff to Judge Weinstein-whereby co-conspirator Judge Peter Weinstein wrote to Warden John Whitehurst with a copy of one pf the constitutionally protected letters written to co-conspirator Weinstein begging warden Whitehurst to punish plaintiff despite the fact that the only provision allowing a Florida State inmate to be punished for any form of court filings is through Florida Statute 944.279. A fact plaintiff advised Judge Weinstein of on many occasions.

   - The plaintiff could never overstate that State Attorney Michael Satz was/is the mastermind behind all the criminal conducts and constitutional rights violations put forth by the Broward County State Attorney's office, regarding plaintiff's instant complaint.


70. The plaintiff could not emphasize and re-emphasize enough that involved conspirators were well aware of the fact that the plaintiff diligently researched the law and was well versed in the fact that conspirators had absolutely no subject matter jurisdiction to re-invoke jurisdiction upon the court with the State's never before "EMERGENCY" motion and were clearly violating the prohibition of double jeopardy when doing so. Consequently the primary goal was to completely ambush the plaintiff from all angles never, ever giving plaintiff any form of ability to fight against yet another unprecedented layer of judicial pre-meditated injustices.

   - Despite the "EMERGENCY" motion being written on 10/15/2014 conspirators made a conscious decision not to construct the arrest paperwork for plaintiff until 10/23/2014, filed 10/24/2014, thus plaintiff transported to Broward on 10/28/2014.

   - The State and Judge Weinstein were very cognizant that there was absolutely no probable cause to "ARREST" the plaintiff, nor did they have one smidge of jurisdiction to do so.

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

71. Exhibit Y is a copy of the State's never before "EMERGENCY" motion. This motion is utterly infested with nonsensical babble, utter avoidances of truth etc,etc,etc. The State has the audacity to throw rule 3.170 around like a rag doll, presenting a level of ignorance and utter stupidity unrecognized within any form of civilized criminal justice system. (SEE Exhibit Y)

- The State, within their never before "EMERGENCY" motion, actually constructs exactly why their never before motion was constructed, by presenting at pg. 25 a portion of a correspondence plaintiff sent to KING PIN STATE ATTORNEY MICHAEL SATZ;

" I will be released from prison later this year. If arrests have not been made prior to my release, I guarantee they will soon thereafter. Once again, this correspondence is all about accountability."

What fun is that for all the high ranking co-conspirators involved in plaintiff's case to simply allow plaintiff to be released and perform his constitutionally protected rights and duty as a red blooded American citizen to expose the unforgivable injustices surrounding plaintiff's case, when conspirators could simply ambush the plaintiff with a never before "EMERGENCY" motion.

72. During the initial 10/30/2014 hearing Assistant Public Defender Sarah Sandler was actually fighting for plaintiff. She stated in open court "Judge you don't have jurisdiction to even hear this motion." The result was to get rid of MS. Sandler and fabricate the transcripts as if Ms. Sandler never spoke those words.

- Constructed within all the lies and fabrications are some truths.

MR. ROOD: I'm going to get right to it. So, we filed this motion. I mailed a copy to the Defendant, Mr. Watson, where he was at the reception medical center, he was transferred back here, so to my knowledge he hasn't gotten a copy of this motion.

I have asked the court deputies to give this copy to Mr. Watson and he can give it to his attorney at the proper time, if and when he gets an attorney.   SEE Exhibit z at pg. 4

- Here, in the first portion of this quoted transcript, you have the assigned prosecutor, Mr. Morgan Rood, who is well aware of plaintiff's case through the construction of the State's response to plaintiff's 3.850 motion, admitting that he intentionally waited till he knew plaintiff would not receive a copy of the motion (If it was in fact sent) when the motion was constructed weeks prior to Mr. Rood allegedly sending said motion. NEVER FORGET INVOLVED CONSPIRATORS COULD NOT ALLOW PLAINTIFF THE OPPURTUNITY TO RECEIVE A COPY OF THE STATE'S MOTION ALLOWING THE OPPURTUNITY TO DEFEND AGAINST SUCH. IMPORTANTLY THE PUBLIC DEFENDERS OFFICE DENIED PLAINTIFF'S CONSTANT REQUEST'S FOR A COPY OF THE MOTION AND COPIES OF ALL CASES CITED IN THE STATE'S MOTION.
- The second portion of this quote, that Mr. Rood actually requested the "deputies to give this copy to Mr. Watson" is a total fabrication. NEVER DID PLAINTIFF RECEIVE A COPY OF THE STATE'S MOTION. A BLATANT INTENTIONAL INJUSTICE.
- At this juncture it's important to point out that three (3) separate court reporters fabricated their transcripts in regards to plaintiff's case #095531CF10A in Broward County. The scariest aspect of these undisputed truths is, court reporters Michael Happ, Sandi Digiaimo and Vivian

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

Rock had co- conspirators at their side to dictate exactly what fabrications needed to be constructed within their transcripts sworn to be a true record.
- It would take hundreds upon hundreds of pages to accurately detail the unprecedented 10 yearlong conspiracy, especially during the pendency of the State's "EMERGENCY" motion however for purposes of instant complaint plaintiff will continue to do his best to abbreviate, expecting testimony to bring about the full truth.

73. The next hearing was 11/03/2014 (SEE Exhibit AA). On page 4 co-conspirator Judge Levenson admits he's never seen such a motion "I've never been confronted with this"

   - On page 5 Ms. Sandler brings up the fact that the State's "EMERGENCY" motion is in fact not an emergency;

       Ms. Sandler: Well, I haven't spoken with him, Mr. Long has spoken with him, I don't know the status of that is. My initial concern is when these alleged communications occurred, because I don't see how you drop an emergency motion like this when you have had however long...

   - It appears that Ms. Sandler was not a co-conspirator and was unaware of the fact that there were so many conspirators working together for one goal which was to continue plaintiff's false imprisonment.
   - Co-conspirator Judge Levenson let it known his refusal to allow plaintiff to say anything in open court;

       THE DEFENDANT: Can I say something?

       THE COURT: No, you may not ...      SEE Exhibit AA at 7

74. Despite the overwhelming amount of intentional fabrications within the transcripts the utter ambush was still inherent;

   THE COURT: Mr. Watson, do you want to represent yourself, or do you want the Public Defender? It's entirely up to you.

   THE DEFENDANT: I'd like the Public Defender's office, but I'd like to be able to talk to them about my evidence that I have, which is 500 pages.

   THE COURT: You know what, you're going to have the opportunity to talk, 'cause I'm going to let her go over there and talk to you right now, as long as you behave, and you'll have plenty of time to talk to your lawyer because were not coming back until Wednesday afternoon.

   THE DEFENDANT: You think that gives enough time to lok at 500 pages of my side?

   THE COURT: You know what, it could be the Schlesinger book on the Kennedy administration, which is " A THOUSAND DAYS" whatever it is, but we're doing this on Wednesday afternoon, unless you say, "You know what, I waive this and I'm going to stay in custody." What do you want to do? If you want to stay in custody, no problem, we'll set this off in December. Do you want that, or do you want to get this done on Wednesday? Go talk to your client about it and see what he say's.

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

-Plaintiff was the only person smart enough to comprehend if the court date was set off until "December" and plaintiff's release date was November 11th ,when plaintiff would show up at the December hearing the plaintiff would have to be set free because his sentence would have expired.

- Plaintiff was explaining to Assistant Public Defender's Sandler and Long that he wanted to accept the Judges offer for the hold order. Neither, Ms. Sandler or Mr. Long could understand why plaintiff would want to prolong something that could end in a couple of days,that might result in plaintiff's release. Plaintiff had/has absolutely zero trust in the Public Defender's Office or anyone involved in his case, therefore he did not want to share with Sandler or Long the real reason he wanted to accept. Finally after several minutes of arguing with Sandler and Long, he finally relented and explained if the plaintiff's date was set off until December, his sentence would be complete and the next time plaintiff walked into the courtroom, by law, he would have to be released. The plaintiff watched the light go off in both their heads as they were able to comprehend the accuracy to what plaintiff had just explained.

- Judge Jeffrey Levenson went into great detail when stipulating the terms of the "HOLD" order; the plaintiff accepted.

Synopsis—Mr. Watson you're not going to be able to change your mind, once you accept this agreement, you're not going to be able to request to be released until the date of the December hearing.—Judge Levenson ended his stipulations by explaining "RELAX MR. WATSON WE'LL TAKE THIS OME STEP AT A TIME"

- The blatant fabrications within the transcripts of the 11/03/2014 hearing include the intentional omission of the stipulations made by Judge Levenson made in open court to the binding (verbal) contract made between Judge Levenson and plaintiff as per the "HOLD" order.
- The problem conspirators have, is the hold order itself was already made a part of the record. SEE Exhibit AA and Docket.  Yet, zero documentation of the stipulations made by Judge Levenson inside the transcripts of the 11/03/2014 hearing.
- THE NEXT HEARING WAS SET FOR WEDNESDAY DECEMBER 3RD AT 2:00 P.M.

75. On November 7th 2014 plaintiff was once again awoken to yet another layer of unrivaled corruption. A Broward County Deputy advised plaintiff he had an emergency hearing scheduled for later that morning. It didn't take a rocket scientist to figure out plaintiff's worst nightmare's had once again come true, that either Assistant P.D. Sandler and or Long had advised the State of plaintiffs knowledge, that according to the law, plaintiff would be set free at his next hearing, if he were not resentenced prior to his 11/11/14 release date.

- At the 11/07/14 hearing Ms. Sandler was nowhere to be found. She was replaced by co-conspirator Asst. P.D. Tamara Curtis, who never so much as said hello to plaintiff prior to the hearing, instead when plaintiff's case was called she walked up to the podium, the following conversation ensued;

THE COURT: Mr. Watson is present?

Ms. Curtis: Judge the first thing I'm going to do is, move to vacate the Court's order from November 3rd. I don't think it is a legal order. I don't know what the Court can hold him on beyond- -

SEE Exhibit BB

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

****** The break in the transcripts here is because the plaintiff yelled in open Court ;

THE DEFENDANT: Wait a minute, I never agreed for the Public Defender's office to vacate the agreement made between me and the Judge, I never even met this lady, I don't even know her name.

- This outburst of plaintiff's was intentionally omitted from the transcripts
- The alleged conversation that took place subsequent to Ms. Curtises opening statement;

THE COURT: You stipulated it, I didn't.   -   Is a total fabrication.

76. The utter shock that plaintiff was once again being subjected to unparalleled misconducts is documented on page 7;

THE DEFENDANT: Monday is an evidentiary hearing?

THE COURT: Yes.

THE DEFENDANT: I THOUGHT WE WERE GOING TO PUT THAT OFF BECAUSE HOW CAN I HAVE TIME TO BRING IN WITNESSES, PEOPLE THAT I NEED, I HAVEN'T HAD THAT OPPURTUNITY, SIR.

**** The alleged following conversation;

THE COURT: Your lawyer has told me to forget it…    - Is a total fabrication, the actual conversation that ensued plaintiff's shock about a Monday evidentiary hearing is in fact illustrated on page 10 ;

THE COURT: Who are the witnesses that you want?

THE DEFENDANT: I want the informant who came forward and confessed to the police that-- (**The transcripts here intentionally omit the remainder of my sentence which is as follows "police had forced him to conspire to falsely imprison me and I'M innocent")

THE COURT: Are you moving at this time to produce the informant to testify to the court?

THE DEFENDANT: Yes.

THE COURT: That motion will be denied. All right, what else do we have at this point?

Mr. Rood: We will see you on Monday at 2:00.

THE COURT: It's not relevant to these proceedings. So that motion is resolved. Anyone else you want as a witness in this case, let me know.

THE DEFENDANT: There are several.

THE COURT: Name them.

THE DEFENDANT: My ex-wife.

THE COURT: Do you want your ex-wife to be a witness in this case?

THE DEFENDANT: Yes.

THE COURT: That motion will be denied. What else? Your ex-wife has nothing to do with this. The issue in this case is simple. In the plea agreement before Judge Gillespie, in the transcripts it says, you

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

were not, under any circumstances, to follow any post-conviction proceedings under any circumstances, nor are you to file any correspondence with the State Attorney or anyone else involved with the Government. That's the issue before the court, if you did that or you didn't do that. Now if you have witnesses come in, they're not relevant to that issue.

THE DEFENDANT: IT IS ABOUT THE CONTRACT BEING ENFORCEABLE OR NOT, SIR.

*** Importantly. The main player's in plaintiff's original 3/24/09 false imprisonment-A.S.A. Denise Neuner, Det. Gregory Lecarra, and Det. William Schwartz reared their ugly heads again, during the pendency of the State's "EMERGENCY" motion.

    (a) Ms. Neuner actively participated in every hearing during the pendency of the State's emergency motion, despite the fact that plaintiff's case was at the post-conviction stage, outside her prosecutorial jurisdiction. Moreover, during the 11/10/2014 hearing Ms. Neuner tendered a question to A.S.A. Morgan Rood in open court whereby Mr. Rood asked witness Mathew Ramos the question handed him by Denise Neuner, with a rehearsed, fabricated answer.

    (b) Det. Gregory Lecarra and Det. William Schwartz (once again in a state of utter paranoid schizophrenia they would actually be held accountable for their evil misconducts) listened to all plaintiff's phone calls while he was housed in Broward County jail during pendency of emergency motion. Unsurprisingly they once again coerced knowingly perjured testimony from a witness. A Mathew Ramos had lost trial on a second degree felony, violent crime however, he had not yet been sentenced. A PERFECT CANDIDATE FOR TWEEDLE DEE AND TWEEDLE DUMB TO COERCE MR. RAMOS TO GIVE PERJURED TESTIMONY. WHICH IS EXACTLY WHAT THEY DID. MATHEW RAMOS, ON 11/10/2014 PERFORMED KNOWINGLY PERJURED TESTIMONY IN EXCHANGE FOR A SENTENCE OF PROBATION.***WHAT A COUNTRY***

    (c) IT'S IMPERATIVE TO DOCUMENT HERE, THE EVILS PUT FORTH BY NAMED GOVERNMENT ACTORS, HAVE A DOUBLE EDGED SWORD. NOT ONLY ARE THEY RUINING THE LIVES OF KNOWINGLY INNOCENT AMERICAN CITIZENS AND THEIR LOVED ONES, THEY ALLOW PERSONS SUCH AS DENA AIELLO WHO IN FACT ORCHESTRATED THE 10/21/09 FIREBOMBING OF PLAINTIFF'S MEDICAL OFFICE (A FIRST DEGREE FELONY PUNISHABLE BY LIFE WITH NO STATUTE OF LIMITATIONS) TO FREELY CONTINUE TO BREAK THE LAW WITH NO CONCERN WHATSOEVER AS TO CONSEQUENCE OR ACCOUNTABILITY. IT'S WIDELY KNOWN IF YOU WANT TO PURCHASE ILLEGAL DRUGS DENA AIELLO IS THE PERSON TO CONTACT. ANY AND OR ALL DRUG TRANSACTIONS INVOLVING DENA AIELLO HAVE ZERO RISK OF ARREST!!!

77. Once again to detail all the fabrications contained within the transcripts of hearings during the pendency of the state's emergency motion would take voluminous amounts of pages and will be detailed during future court proceedings however, in regards to the ambush that occurred during the 11/10/2014 hearing (HOURS PRIOR TO PLAINTIFF"S SCHEDULED RELEASE FROM PRISON) the plaintiff will discuss the worst of the fabrication's; SEE Exhibit CC

   - The involved actors were well aware of the plaintiff's knowledge of the law, especially pertaining to his particular circumstances-that the state did not have jurisdiction to re-invoke jurisdiction upon the court and they violated the prohibition of double jeopardy when doing so. In an effort to obliterate plaintiff's will to continue to fight for truth and justice subsequent to the pre-determined resentence they put forth the following, unforgivable, injustices;

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

- In the middle of the hearing A.S.A. Morgan Rood exclaimed in open court –"YOUR HONOR WE JUST DISCOVERED THE CONTROLLING CASE IN THESE CIRCUMSTANCES IT'S THE HUMMEL V STATE CASE A 2013 CASE RIGHT HERE IN THE 17TH JUDICIAL CIRCUIT WITH JUDGE PAUL BACKMAN"

- Mr. Rood then tendered a copy of the Hummel case to Judge Levenson and Tamara Curtis.

MR. ROOD WENT ON TO GIVE DETAIL AS TO HOW ON POINT IT WAS WITH PLAINTIFF'S CASE THAT HUMMEL HAD AGREED TO A PLEA AGREEMENT THAT IF HE VIOLATED HE COULD BE RESENTENCED TO THE MAXIMUM TIME, WHICH HUMMEL ALLEGEDLY DID AND JUDGE BACKMAN BROUGHT HUMMEL BACK AND RESENTENCED HIM TO THE MAXIMUM AND THE 4TH DCA AFFIRMED THE FESENTENCE.

- Once again unless you had to live in the shoes of plaintiff you would never know what such pre-meditated evils were like, the affect the state was seeking to induce upon plaintiff in fact worked, plaintiff believed "Oh my god I missed that my life is over"
- Co-conspirator Judge Jeffrey Levenson (fully aware he did not have jurisdiction to resentence plaintiff and violated the prohibition of double jeopardy when doing so) immediately subsequent to granting the state's never before "EMERGENCY" motion , when justifying his intentional traitorous ruling, raised the copy of the Hummel case up high in his right hand and vomited "AND THERE'S THIS CASE"
- ONE SUB PLOT PLAINTIFF WILL POINT OUT-THE COURT ROOM ON 11/10/2014, THE DAY PRIOR TO PLAINTIFF'S SCHEDULED RELEASE FROM HIS 6 YEAR FALSE IMPRISONMENT TERM, DURING THE HEARING ON11/10/2014 THE COURT ROOM WAS PACKED TO THE GILL'S-STANDING ROOM ONLY-STUFFED WITH TRAITOROUS JUDICIAL OFFICER'S ALL WITH A VESTED INTEREST TO SHOW SUPPORT TO THE ONGOING CONSPIRACY OF ACTUAL FELONY CRIMES AND CONSTITUTIONAL RIGHTS VIOLATIONS COMMITED BY PERSON'S WHO TOOK AN OATH AND RECEIVE A TAXPAYER'S SALARY TO PROTECT AMERICAN CITIZENS FROM THE VERY EVILS THEY PRACTICE WITH AN UNBRIDLED ARROGANCE THAT THEY WILL NEVER BE HELD ACCOUNTABLE -CO-CONSPIRATOR JUDGE LEVENSON WAS CONSIDERED NOTHING SHORT OF A TRAITOROUS HERO WHEN HE RESENTENCED PLAINTIFF ONLY A FEW HOURS PRIOR TO PLAINTIFF'S SCHEDULED RELEASE-INTENTIONALLY PREVENTING PLAINTIFF FROM DOING EXACTLY WHAT HE IS NOW DOING-DOCUMENTING THE UTTER INFESTATION OF CORRUPTION WITHIN THE CRIMINAL JUSTICE SYSTEM.

78. The problem conspirators have always faced is the plaintiff was/is never simply going to give up. To commit suicide-to relent to the very traitorous, tyrannical practices countless heroic American heroes fought and died for in order for their countrymen not to have to endure.

- Subsequent to being resentenced, the plaintiff once returned to prison, looked up the Hummel case and lo and behold everything Mr. Rood vomited in open court in regards to the Hummel case was total, intentional fabrications.

-The irony to co-conspirator Morgan Roods criminal, traitorous presentation of the Hummel case is the actual ruling of the Hummel case was perfectly on point with what the 4th DCA finally decided in plaintiff's case;

" Accordingly we vacate the order denying Hummel's 3.850 motion and remand the case with directions to resentence Hummel to 61.05 months in L.T. case no. 03-2284, with credit for time served.

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

BECAUSE IT SEEMS LIKELY THAT HUMMEL WILL BE ENTITLED TO RELEASE IMMEDIATELY UPON HIS RESENTENCING, WE DIRECT THE TRIAL COURT TO ACT EXPEDITIOUSLY IN THIS MATTER UPON ISSUANCE OF OUR MANDATE." See Exhibit CC- COPY OF Hummel v state 4D11-4895.

79. Exhibit DD is a copy of the pathetic motions put forth by the Broward County Public Defender's office in response to the state's never before "EMERGENCY" motion. Intentionally never putting forth the most blatant dispositive issues, double jeopardy, and Levenson did not have subject matter jurisdiction to even hear the state's "EMERGENCY" motion (let alone it was not an emergency). Both issues were brought forth to both Assistant P.D.'s Curtis and Long by plaintiff, who in response intentionally lied right to plaintiff's face. The allegations plaintiff is making are very serious and should result in prosecution, therefore plaintiff will bring detail during trial court testimony. It's imperative however, to point out that the blatant conspiring criminal conducts and constitutional rights violations put forth by the Public Defender's office were performed at the instruction and direction of Public Defender Howard Finkelstein.

80. What does the reviewing Judge believe must happen with knowledge that conspirators, conspired to intentionally put forth false information in open court regarding the Hummel case? COORECT, THE TRANSCRIPTS MUST BE FABRICATED, INTENTIONALLY DELETING ANY AND OR ALL CONVERSATION SPEWED OUT OF CO-CONSPIRATOR MORGAN ROOD'S MOUTH IN REGARDS TO THE HUMMEL CASE.

   - Plaintiff wrote to his then representation with the 4th DCA (remember co-conspirator judges Ciklin, Damoorgian, and Gerber barred plaintiff from future filings with the 4th DCA so plaintiff was unable to represent himself) Assistant P.D. Mara Herbert explaining that the transcripts of the 11/10/2014 hearing would have to be fabricated, explaining why and that plaintiff's mother and sister were in the court room on that day and would sign sworn affidavits verifying plaintiff's account of what was said during 11/10/2014 hearing.

      - In response to these matters of great public importance Ms. Herbert sent an e-mail exuding yet another mind numbing layer of ignorance and utter stupidity;

        " As far as the fabricated transcripts, that issue I don't understand. I am not using any of the transcripts that Todd sent me. All I need is the courts final ruling. I don't believe that is an issue. If you can provide a better explanation of the issue, I will look into it." SEE Exhibit EE

   - Not willing to allow such an intentional, traitorous response deter plaintiff he wrote the 4th DCA directly once again providing detail to the predictions that the court reporter constructing the transcripts would in fact fabricate them. Unsurprisingly the response of the 4th DCA was to "stricken" all of plaintiff's letters addressing these issues of great public importance. (SEE Exhibit FF docket 4thh DCA)
   - Despite plaintiffs plea's that Vivian Rock was going to fabricate the 11/10/2014 transcripts the 4th DCA granted Ms. Rock 3 extensions, taking over 9 months to construct 71 pages of transcripts and exactly as predicted Ms. Rock IN FACT FABRICATED THE TRANSCRIPTS OF THE 11/10/2014 HEARING. SEE EXHIBIT FF.

81. Plaintiff was aware or two cases that were on point with his case that opined the presiding Judge did not have jurisdiction to resentence the defendants Joslin and Robie to an increased sentence. In Robie the Judge ruled;

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

ROBIE'S AGREEMENT TO RETURN FROM FURLOUGH OR FACE AN INCREASED SENTENCE WAS SET OUT IN HIS PLEA AGREEMENT. IF THE COURT HAD WAITED TO SENTENCE ROBIE UNTIL HIS RETURN FROM HIS FURLOUGH, JEOPARDY WOULD NOT HAVE ATTACHEDAND THE COURT, AND THE COURT WOULD HAVE RETAINED JURISDICTION TO INCREASE HIS SENTENCE IF HE DID NOT HONOR THE AGREEMENT. HOWEVER, THE TRIAL COURT LOST JURISDICTION TO INCREASE ROBIES SENTENCE WHEN THE JUDGEMENT AND SENTENCE WERE RENDERED. Robie v State, 807 So.2d 781 2nd DCA 2002

- However these two cases did not involve a plea agreement. Finally, through diligent research plaintiff was able to locate the Spain v State case that was perfectly on point with plaintiff's case, whereby Mr. Spain was resentenced to an increased sentence subsequent to his initial sentence via a plea agreement. His resentence was overturned, explaining the Judge did not have subject matter jurisdiction to resentence Mr. Spain-Spain v State, 849, So.2d 340 2nd DCA 2003

- Based on this information plaintiff constructed a motion in accord with 3,800 (b) motion to correct sentencing error citing aforementioned cases and sent it to Asst. P.D. Mara Herbert, presenting the untenable facts that Judge Jeffrey Levenson in fact did not have subject matter jurisdiction to resentence plaintiff.

82. Plaintiff was well aware, that according to the law, Ms. Herbert would have to adopt his motion. Plaintiff was also well aware that if Judge Levenson was the presiding Judge ruling on his motion to correct sentencing error, plaintiff had absolutely zero chance of co-conspirator Judge Jeffrey Levenson granting plaintiff motion presenting indisputable facts that Judge Levenson "IN FACT" did not have jurisdiction to resentence plaintiff. Consequently plaintiff constructed a letter sent to Levenson, detailing the actual felony crimes and constitutional rights violations he orchestrated during the pendency of the state's emergency motion. SEE Exhibit GG, which Levenson filed with the court on December 4th, 2015. SEE also Exhibit GG.

- The following day Levenson contacted DOC and demanded plaintiff sign a no contact order with him. SEE Exhibit HH.

- Plaintiff's plan to finally induce truth and justice upon his case, by not having psychopathic criminal co-conspirator Judge Jeffrey Levenson as the presiding Judge on his motion to correct sentencing error worked out to perfection. On December 5th, 2015 Ms. Herbert filed a motion to correct sentencing errors, adopting plaintiffs on point cases sent to her. Judge Merrigan was the assigned judge (NOT LEVENSON) and a hearing was set for December 22nd, 2015. Plaintiff was ecstatic! Knowing the law as well as he did, he knew, according to the law, plaintiff would be released immediately subsequent to the 12/22/2015 hearing. Just in time to surprise plaintiff's 3 beautiful girls by showing up at Christmas! NOT SO FAST, WERE TALKING ABOUT BROWARD COUNTY.

83. Plaintiff sent a letter to presiding Judge Merrigan explaining the factual circumstances of plaintiff's case and that he would, in all likelihood, be asked to conspire in such. SEE Exhibit II.

-On December 22nd, 2015, The plaintiff was brought into the courtroom however, Judge Merrigan refused to hear plaintiff's "MUST" hearing in accordance with Rule 3.800 (b).In the alternative co-conspirator Merrigan on January 4th 2016 granted the state's motion to transfer plaintiff's motion to co-conspirator Levensons court. SEE Exhibit JJ. It goes without saying these unspeakable injustices were performed inside of co-conspirator Merrigans chambers whereby plaintiff had no representation.

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

- Importantly, not only did plaintiff have a no contact order with psychopathic criminal Levenson, at the time co-conspirator Merrigan transferred the case to Levensons courtroom, Levenson and his family, were also being surveilled 24 hours a day seven days a week by BSO at the time. Based on a knowingly fabricated document, alleging plaintiff was plotting to murder Judges(Judge Levenson in particular), Prosecutor's, Law Enforcement and their children. See Exhibit KK.

- Plaintiff sent a letter to co-conspirator Merrigan explaining his feelings on his blatant conspiring actions he made a conscience decision to take. SEE Exhibit.

84. Unsurprisingly Judge Jeffrey Levenson once again intentionally raped plaintiff of his liberties denying plaintiff's motion to correct sentencing error reasoning it was "WITHOUT MERIT" (SEE Exhibit MM) despite the fact that constructed within Ms. Herberts motion;

" It was disingenuous for the State to represent to this court that the agreement conferred jurisdiction, WHEN IN FACT, IT DID NOT. Especially since the motion was filed literally less than one month prior to Defendants release on the 6 year sentence.

AS The State failed to properly invoke the court's subject matter jurisdiction, this court was without jurisdiction to enforce the terms of the sentencing agreement and increase Defendant's sentence."

SEE Exhibit NN at 8

- Unsurprisingly, conspirators being in a state of paranoid schizophrenia they would actually be held accountable for their conspiring criminal conducts, plaintiff was forced to sign a no contact order with the Broward County Courthouse or be sent to confinement. SEE Exhibit PP

84. Exhibit OO is a copy of a deposition performed by Judge Levenson, his blatant perjury contained within such will be detailed during trial testimony.

85. Plaintiff wrote a letter to Chief justice of the 4th DCA Corey Ciklin, who was one of the Judges who ruled to bar Plaintiff for his appropriate filing of writ of mandamus. Explaining the factual circumstances of his case and plaintiff was going to do everything in his power to see to it that Ciklin is prosecuted. (SEE Exhibit QQ)

85. During the time in prison subsequent to plaintiff's resentence plaintiff sent a complaint to the U.S. District Court Southern District of Florida via FOIA request, explaining the ongoing conspiracy of judicial misconducts.

- Judges White and Cohn ruled that plaintiff's complaint" set forth facts which may support the granting of his relief" and pre-trial proceedings. SEE Exhibit RR

- This ruling allowed the opportunity for plaintiff to contact the states informant William Glenn Steers while in prison, because he was considered defendants star witness in regards to his upcoming trial.

- Exhibit SS is a copy of the invoice of the legal call made to William Steer's via Private Investigator Denise Rock.

- Exhibit TT is a copy of a sworn Affidavit detailing a portion of the conversation within the legal call. Mr. Steers gave explosive information as to what occurred just three days subsequent to the filing

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

of Mr. Steer's truthful confession to Defense Attorney James Lewis, that police came back to his residence "FORTY DEEP" and advised him he could still be prosecuted for the drugs he had in his possession on3/24/09. That police were making up lies as they went along, originally they wanted MR. Steers to say plaintiff had some unknown person leave 10,000.00 on his doorstep, that's why he gave the information he did to Defense Attorney James Lewis. That lie was changed to people he knew through third parties advised him he would get 10,000.00 if he changed his testimony.

- Mr. Steer's went on to explain that the recording device (digital recorder #100118958) was located in the visor area of his truck and subsequent to police realizing there was nothing in the conversation inside Steers vehicle that could be spun to fit law enforcement's conspiracy to falsely imprison plaintiff they ripped it out and destroyed it right in front of him.

- The invoice and sworn affidavit are the crux of plaintiff's newly discovered evidence motion he filed on 4/12/17, details infra.

86. On January 18th, 2017 the 4th DCA ruled Levenson did not have subject matter jurisdiction to resentence plaintiff and plaintiff must be "DISCHARGED". SEE Exhibit G-1. However, co-conspirator Judge Merrigan flat out refused to comply with the 4thh DCA"S mandate. It was not until 3/10/17 via an order "to enforce mandate" that Judge Merrigan finally released plaintiff.

- Immediately upon his release from prison, the plaintiff sent an e-mail to conspirator Michael Satz briefly detailing his criminal obstructions of justice and constitutional rights violations he orchestrated. SEE Exhibit UU

87.In response to plaintiff's e-mail on 3/17/2017 Judge Merrigan, without jurisdiction to do so (plaintiffs case had been finalized) signed a no contact order barring plaintiff from contacting all co-conspirator prosecutors involved in plaintiff's case, including Michael Satz. The primary reason Judge Merrigan put forth such traitorous, tyrannical criminal obstructions of justices, plaintiff repeatedly advised Mr. Satz that as soon as he was released he was going to walk up to Mr. Satz, while recording, and ask him the name of the young man who died due to the sinister interests of the Broward County State Attorney's office and BSO attempting to secure the conviction of Dr. Marilee Glauser AND HER HUSBAND Sheldon Glauser.( plaintiff did not know his name until April of 2019 and absolutely not one of the involved judicial officer's were willing to assist in retrieving this young man's name) SEE Exhibit UU-1

88. In yet another showing of overt pre-meditated, cowardly, tyranny, on 3/20/2017 4 BSO officers and 1 Ft. Lauderdale officer showed up at plaintiff's, senior citizen mothers house "Carol Gould", brandishing assault rifles, to serve the illegal no contact order (constructed for the sole purpose to criminally obstruct justice). While one officer was serving plaintiff the civil no contact order, the other officers were aiming the assault rifles at plaintiffs 3 beautiful teen age daughters and his senior citizen parents.

89. On 3/23/2017 plaintiff sent an e-mail to Judge Levenson, once again briefly touching on his never before criminal practices and constitutional rights violations;

"Answer this one question are you willing to admit that during the 11/10/2014 evidentiary hearing A.S.A Morgan Rude handed you a copy of the hummel v state 128 so. 3d 127 (4thDCA 20130 CASE DISCUSS THE CONTENTS OF THIS CASE IN OPEN COURT HENCE THE TRANSCRIPTS OF THE 11/10/2014 EVIDENTIARY HEARING INTENTIONALLY OMIT ANT TENDERING OR DISCUSSION OF THE HUMMEL CASE?

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

Colluding with both the state and public defender's office to once again rape me of my freedoms purposing to save your own asses, is all in a day's work for members within the broward county crinminal justice system." SEE Exhibit V V.

- Also included in Exhibit V V is an e-mail sent to Judge Merrigan.

90. Wanting very badly to inform Jonathons parents the truth's as to how and why their child died, the plaintiff went to visit the health Department to inquire as to why the document constructed by A.S.A. Denise Neuner was alleging the Health Department conducted an investigation on 10/16/09 at plaintiff's medical office was fabricated.

- Upon arrival plaintiff met with a very helpful lady Pat Callahan, who assisted plaintiff in his pursuit of truth and justice as to the fabricated document, involving the Florida Department of Health.

- Referring back to #65 and general counsel Toby Schultz's involvement. Plaintiff will simply present exhibit WW which contains e-mails to Pat Callahan and the documents constructed by the Florida Health Department in regards to the alleged investigation into the mental capacity of Dr. Marilee Glauser. Mr. Schultz flat out refused to return plaintiffs phone calls, and when plaintiff was able to finally get Mr. Schultz on the phone he hung up on plaintiff. Once again the undisputed facts put forth by plaintiff result in very serious criminal prosecutions therefore plaintiff will stand on the information put forth until future court proceedings.

91. Exactly as plaintiff promised, immediately upon his release plaintiff chose to continue to exercise his constitutionally protected rights and duty to expose the ongoing conspiracy of public corruption

(A) Plaintiff went to the Broward County Courthouse and passed out flyers, written under the penalties of perjury briefly explaining some of the intentionally unprosecuted crimes committed by named judicial officers. SEE Exhibit XX. Fearing conspirators would retaliate for his exercising of rights and duties plaintiff had a young man video tape him. Exactly as predicted law enforcement surrounded plaintiff and threatened to arrest him for "disseminating information." There is no statute or rule against disseminating truthful information about intentionally unprosecuted crimes.

(B) Plaintiff put together a youtube site presenting videos of pictured corrupt judicial officer's, explaining within the videos the crimes and constitutional rights violations committed by pictured officials. SEE Exhibit YY

(C) Filed 404 page newly discovered evidence motion that was originally assigned to Judge Merrigan, who intentionally did not order the State to respond to motion. Then, on the day of plaintiff's arrest, July 18, 2017 (over 3 months subsequent to filing of motion) Merrigan had a miraculous epiphany and recused himself from plaintiff's case.

***** Importantly, Judge Elizabeth Scherer was assigned newly discovered evidence motion subsequent to Merrigan's recusal. Judge Scherer is intentionally not ordering the state to respond to plaintiff's motion. Further layers of criminal obstructions of justice.

(D)Plaintiff met with Sergeant Christopher Cathcart with the Broward County Internal Affairs division and explained the never before circumstances of plaintiff's case. Physically presenting evidence to him and pointing out where other clear and convincing evidence proving a large number of crimes and constitutional rights violations committed by a large number of BSO employees are filed as a matter

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

of court and public record. Furthermore, plaintiff sent many e-mails to Christopher Cathcart, keeping him abreast of the up to date misconducts. SEE Exhibit ZZ. In response Lt. David Fernandez from Internal Affairs sent plaintiff correspondence stating;

"Please be advised that the circumstances surrounding your complaint filed with this office on 06/01/2017, has been forwarded to the Public Corruption Unit, for further review.

This matter is closed in our office at this time and no further action will be taken."

Within a few weeks of this response Sgt. Chris Cathcart, was promoted to Lieutenant of Internal Affairs. To this date the Broward County "public corruption Unit" (run by co-conspirator Michael Satz) has not investigated one scintilla of the overwhelming amount of clear and convincing evidence proving "Public Corruption" surrounding plaintiff's case because he is the primary person responsible fot the intentionally unprosecuted acts of public corruption. SEE Exhibit A-1.

(E) Plaintiff sent Sheriff Scott Isreal correspondences while in prison and e- mails immediately upon release, giving undisputed facts in regards to the ongoing conspiracy of misconducts involving many named BSO employees. Sheriff Scott Isreal intentionally did not investigate these matters of great public importance. SEE Exhibit B-1

92. Co-conspirators Judges Merrigan, Haimes , Gillespie, Levenson,  and A.S.A.'s Neuner, and Rood got together for a meeting within the Broward County Courthouse to discuss the fact that they were unable to have plaintiffs postings on youtube removed (because the information contained within postings was not only true and accurate they are substantiated with an overwhelming amount of evidence) the decision was made as a group to have plaintiff arrested. (SEE Exhibit C-1 Depositions of Judges, and Judicial Assistants)

- Once again, On July 18th 2017, plaintiff was arrested without probable cause and for the purpose to criminally obstruct justice. Intentionally depriving plaintiff of a plethora of constitutionally protected rights.

- Plaintiff shows up to the magistrate/bond hearing and a Judge from Miami Jeffrey Langer has already been assigned jurisdiction by the Florida Supreme Court. The only possible way this could have happened would have been for the Florida Supreme Court to assign jurisdiction prior to plaintiff's arrest. ***** Importantly, to this date, the plaintiff has been unable to locate any order, whereby the Florida Supreme Court assigned jurisdiction to the 11th circuit of Dade County, Florida.

-The alleged non-adversarial bond hearing took over 40 minutes with the states witnesses speaking the entire time. Judge Langer placed a 100,000.00 bond on plaintiff's misdemeanor charges

The main witness for the State, who was the actual arresting officer Detective Joseph Kessling is assigned to protect the Judges at the Broward County Court house. Detective Kessling, as any reasonable person would know, not only did not have probable cause to have arrested plaintiff, his arrest was a direct retaliation for plaintiffs exercising his rights and duty to report public corruption.

93. The Florida Supreme Court allegedly invoked discretional jurisdiction upon plaintiff's case and specifically assigned County Court Judge Samuel J. Slom to handle the judicial side of plaintiff's case.

***** It took 10 days for any paperwork to be filed in reference to probable cause for 7/18/2017 arrest.

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

- During the initial court hearing County Court Judge Samuel Slom was the presiding Judge (who travelled from Dade County to preside in a Broward County court room) the Public Defender's office withdrew and the Broward County State Attorney's office recused itself.
- Judge Slom conducted a Faretta and allowed plaintiff to proceed as a prose litigant. Judge Slom thus accepted a motion in open court from plaintiff as a prose litigant to reduce bond. Judge Slom scheduled a hearing the following week to hear plaintiff's prose motion to reduce bond.

94. Unbeknownst to plaintiff, co- conspirator Michael Satz, personally contacted Governor Rick Scott who in response constructed executive order #17-213 assigning Katherine Fernandez Rundle, State Attorney for the Eleventh Judicial circuit of Florida to handle the prosecution of plaintiff's plaintiffs 7/18/2017 arrest. (SEE Exhibit D-1)

*** Importantly, The Florida Constitution, allowing Governor Scott to assign prosecutorial jurisdiction to a different circuit, specifically State's (FL. STAT. 27.14 (1)) "Any exchange or assignment of any State Attorney to a particular circuit shall expire in 12 months after the date of issuance, unless an extension is approved by order of the Supreme Court upon application of the Governor showing good and sufficient cause to extend such exchange or assignment"

- Governor Rick Scott never put forth such an application because the Florida Supreme Court (in particular Chief Judge Jorge Labarga) never appropriately invoked jurisdiction in the first place. Consequently State Attorney Katherine Fernandez Rundle lost jurisdiction to prosecute plaintiff's case August 10th, 2018. A PROSECUTION THAT WAS NEVER LEGALLY ASSIGNED!

95. Due to the overhearing of the jail house phone calls between plaintiff and his sister, discussing the Florida Statutes adjoining plaintiffs charges. How the obscene calls would have to be dismissed and the stalking charges would allow plaintiff to prove his innocence while simultaneously proving all allegations were true and accurate. The blatant decision of the 11th circuit State Attorney's office to join, thus escalate the ongoing conspiracy of government misconducts becomes self- evident from the very first moment A.S.A Michael Von Zamft, a fist degree felony prosecutor was assigned plaintiff's misdemeanor charges.

   - The first hearing attended by A.S.A. Michael Von Zamft was on 8/16/2017- the following conversations took place-SEE Exhibit E-1

   MR. VON ZAMFT: I understand that. I just want to inform you that we also filed an information before you came in—which also included four felony counts.    SEE Exhibit E-1 at 3

***Importantly all four added charges were extortion charges, 3 of the 4 were eventually dropped.

   - Plaintiff's response to the added charges is on page 5;

   THE DEFENDANT: That's amazing. Figures. I mean, it really does. Figures- So were not addressing the fact that it's undisputed that Michael Satz fire- authorized the fire- bombing of my office to cover up the death of a 19 year old; that the only document that's been sent to the court is a document that has my signature on that is, in fact, a forgery. All this goes by the wayside because they come in and file.

   THE COURT: Well, not- it doesn't all go by the wayside.

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

THE DEFENDANT: In a sense it does. And—And it's just the manipulation of the law once again to conceal the truth. And it's just—it's so egregious. And it's been going on for eight and a half years.

96. At this critical stage of the proceedings plaintiff was representing himself. The main goal of the 11th circuit State Attorney's office was, at all cost they must not allow plaintiff to continue to represent himself, allowing a non-attorney to expose the utter infestation of corruption deeply embedded within plaintiff's case. Corruption the 11th circuit criminal justice system was "SPECIFICALLY" assigned to conceal.

At page 7 of 8/16/2017 transcripts;

MR. VON ZAMFT: ..., we also came here prepared to request that the Defendant be examined for incompetence to proceed to trial. I think his ranting's today, what I've heard, seen, have proven to me at least that pursuant to Florida Rule of Criminal Procedure 3.210, that the Defendant may not be competent to proceed to trial or in any other which way, and were moving for him to be examined. That creates a problem because (a) of jurisdiction and (b) HE'S REPRESENTING HIMSELF. AND IF HE'S NOT COMPETENT TO STAND TRIAL, HE IS INCOMPETENT TO REPRESENT HIMSELF.

THE DEFENDANT; Well- And, they already tried that, your honor. Just so you know, when I was resentenced hours before my scheduled release, they had me examined and it was ruled that I was very competent. And you know this prosecutor over here ranting them just-I put forth undisputed facts that are very verifiable to the crimes I'm discussing. And once again they're not being addressed.

*** FROM THE FIRST MOMENT THE DADE COUNTY STATE ATTORNEY'S OFFICE TOOK OVER PROSECUTORIAL DUTIES THE ACTORS MADE IT CRYSTAL CLEAR, THEY HAD NO PROBLEM PUTTING FORTH A MOTION TO DETERMINE COMPETENCY AS A TOOL TO CRIMINALLY OBSTRUCT JUSTICE.***

*** The entirety of the 8/16/2017 makes the efforts of the Dade County State Attorney's office to continue to conceal the truths of "the crimes I'm discussing" crystal clear. None more than on p.p. 27 & 28;

THE COURT: And did- could you tell me who the calls were made to. Was it Judges or-

MS. SILVER: No Judge. It was to- One of them was to Sheldon Glauser.

THE DEFENDANT: Glauser.

Ms. SILVER: Sheldon Glauser. And I believe that Judge Langers order of July 18th, 2017, said that the Defendant shall only be able to communicate by phone, mail, or in person visitation with his attorney of record or agent of that attorney or with family members.

THE COURT: And who is Sheldon Glauser?

MS. SILVER: His former business-

THE DEFENDANT: He's going to be a witness, he's a witness.

MR. VON ZAMFT: Not a family member.

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

THE DEFENDANT: He has first- hand knowledge to the death of the 19 year old, so I'm calling him to get him to sign an affidavit- a truthful affidavit that a 19 year old died due to the sinister interests of the Broward County State Attorney's office.

THE COURT: The one thing I might suggest, and this is just a suggestion, Mr. Watson, is if there is an order that has been entered by a Judge, to deviate from that order you should request permission from the Judge.

THE DEFENDANT: I- I didn't realize calling a witness as a prose litigant was something that deviated from that.

*** It would be re-miss of plaintiff if he did not briefly regress back to page 10 of transcripts.

THE DEFENDANT: Well- - But that is when the charges they state that-- - what I was doing serves no legitimate purpose. Well, obviously, that's a legitimate purpose, as I'm giving truthful information as to ongoing criminal conducts.

97. With the upgrade of charges plaintiff was once again in front of Magistrate Langer to set a bond on the added/upgraded charges. Once again the plaintiff put forth undisputed facts in regards to the unprecedented ongoing conspiracy of intentionally unprosecuted crimes and constitutional rights violations and once again the Dade County State Attorney's office (in their continued efforts to criminally obstruct justice) pleaded to have plaintiff evaluated for competency which would strip him of his prose status. Details of such within Exhibit F-1 transcripts of August 23rd hearing

97. Due to Judge Slom's jurisdiction being relinquished via the upgrade of charges on 9/1/2017 Circuit Court Judge Dava Tunis took over responsibilities of the judicial aspects of plaintiff's case.

*** Here's the major problem there. During the 9/1/2017 hearing Judge Dava Tunis constructed an order that states;

"Pursuant to Justice Labarga's order assigning me to this matter, specifically, Executive order 2018-23. This cause, by agreement of all parties, is transferred to Dade County. The Eleventh Judicial circuit, Judge Dava Tunis, Division 60." SEE Exhibit F-1

(a) There is no such provision allowing a single Florida Supreme Court Judge to "specifically" assign a circuit Judge to handle judicial duties.
(b) A panel of Judges would choose the circuit, then refer the case to be randomly assigned to a Judge
(c) Order #2018-23 does in fact exist. Unsurprisingly, this case is similar to plaintiffs "discretional jurisdiction", obviously intending the defense of ignorance and utter stupidity.  Conspirators never believed these matters of great public importance were ever going to be checked out by plaintiff. SEE Exhibit G-1
(d) AN OVERWHELMING AMOUNT OF UNDISPUTED FACTS PROVES THE ENTIRE PENDENCY OF PLAINTIFFS 7/18/2017 IS AN UNRECOGNIZED SHAM. PERFORMED FOR THE PURPOSE OF CONTINUING TO VIOLATE AN ENORMOUS NUMBER OF PLAINTIFF'S CONSTITUTIONALLY PROTECTED RIGHT'S WHILE SIMULTANEOUSLY ESCALATING THE CONSPIRACY TO CONCEAL THE TRUTH'S OF THE GOVERNMENT MISCONDUCTS INHERENT THROUGHOUT PLAINTIFF'S CASE.

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

(e) Plaintiff contacted Florida Supreme Court Judge Jorge Labarga, as a prose litigant, simply requesting where he could retrieve the order(s) he allegedly wrote assigning jurisdiction of plaintiffs case to the 11th circuit. His Judicial Assistant advised "if he wrote any orders they would be filed with the clerk's office. The clerk in charge Diane Langston advised Plaintiff "no such orders exist." Judge Labarga was well aware of the fact that he did not have jurisdiction to "specifically" assign Judge Tunis and Judge Tunis was well aware she did not have jurisdiction to preside over plaintiff's case when the order she put forth did not invoke jurisdiction upon her. Citing a case that is not plaintiffs.

(f) Judge Labarga and plaintiff have a lengthy history, which will be put forth in future proceedings.

98. During the 9/1/2017 hearing Judge Tunis flat out refused plaintiff to exercise his 6th Amendment right to represent himself absolutely refusing to conduct a Faretta hearing, despite the fact that Judge Slom had already conducted a Faretta hearing and approved plaintiffs prose status.

- Subsequent to the 9/1/2017 hearing plaintiff sent a letter to Judge Dave Tunis (time stamped September 25th, 2017 SEE Exhibit I-1, ) Having been subjected to years and layers of judicial misconduct, plaintiff put forth specific goals that would allow the initiation of the truth seeking process-preventing the conspiracy to continue. At 1 it states in pertinent part;

".I completely understand and truly appreciate your sincerity in wanting me to talk to an attorney, which is a listed request of mine to have a shadow counsel/stand by counsel in a motion previously submitted, however the charges against me are completely and utterly bogus. Especially my four (4) 2nd degree felony extortion charges, which can easily be brought to light during a motion to reduce bond."

- Aforementioned letter to Judge Tunis gives 4 specific goals at the following hearing- all intended to initiate the truth seeking process;

"1- The ability to play the actual phone calls alleging the second degree felony crimes I am currently facing in open court. If the State has not provided a dvd (cd) containing the actual phone calls, I recorded all calls pertaining to the charges and many more and will send them to the Public Defender's office as evidence to be played in open court."

2- Proceed as a prose litigant.

3- Have plaintiff's restated renewed motion to reduce bond with the clerk proving all of plaintiffs allegations serve a legitimate purpose and are lawfully justified in accordance with Florida Statutes, Stalking/extortion.

4- The ability to play the recorded phone call between plaintiff (a prose litigant) and witness Sheldon Glauser. Alleged on two separate occasions by the State to be a violation of the no contact order. A phone call that depicts Mr. Glauser and plaintiff discussing the construction of a truthful affidavit corroborating the undisputed facts that the Broward County State Attorney's office and BSO conspired to cover up the death of a 19 year old, due to the fact that he died due to their sinister interests to convict Dr. Marilee Glauser and her husband Sheldon.

99. During the following hearing (subsequent to Judge Tunis reviewing plaintiffs letter to her time stamped 9/25/17) Judge Tunis flat out refused to entertain any of plaintiffs previously mentioned, constitutionally protected, truth seeking goals.

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

- Once again Judge Tunis intentionally refused to conduct the required Faretta inquiry upon plaintiffs request to proceed as a prose litigant. Opting instead for plaintiff to speak to Assistant P.D. Marjorie Alexis while Judge Tunis takes a 10 minute break in hopes Ms. Alexis could convince plaintiff not to continue to exercise his 6th Amendment right to represent himself.

- During Judge Tunis' break plaintiff explained to Ms. Alexis his educational background, and positive results with his previous prose filings. Ms. Alexis agreed with plaintiff that he should be afforded the opportunity to exercise his 6th Amendment right to represent himself.

- When Judge Tunis returned from her break and learned of Ms. Alexis' advocating plaintiffs efforts to represent himself, she responded "IS THIS WHAT I TOOK A BREAK FOR?" Judge Tunis advised she would take another break for things to be worked out.

- During the second break Ms. Alexis advised plaintiff Judge Tunis is not going to allow him to represent himself, that if plaintiff wanted Judge Tunis to set an affordable bond he better allow the Public Defender's office to represent him.

- Completely against plaintiff's wishes he agreed to allow the Public Defender's office represent him, when Judge Tunis once again returned to the court room.

100. In all, it took 5 months, to have plaintiffs wholly bogus charges reduced from a 200,000.00 bond to a 40,000.00 bond.

- One of the tyrannical conditions of plaintiffs bond was that he needed to contact someone from BSO to set up the traitorous "escort" when plaintiff wanted to show up at the Broward County Courthouse.

- The record reflects that once out on bond, plaintiff left 6 messages with the main number/personnel of BSO, within a 10 day period, explaining plaintiffs bond terms, requesting for someone to call him back asap to set up the escort.

- The primary reason why plaintiff was in such a hurry to set up the escort is, he was finally able to retrieve a copy of the second taking of knowingly perjured testimony involved law enforcement officers forced Mr. Steers to perform and the sworn statement of David Becker, who also admitted law enforcement coerced him to perform knowingly perjured testimony. SEE Exhibits K and K-A

- Plaintiff, wanted to enter the two sworn statements as an addendum to his newly discovered evidence motion corroborating and substantiating the crux of the motion.

- In the interest of justice involving matters of great public importance plaintiff contacted several media sources, explaining he would like them to meet plaintiff at the court house to witness the tyrannical escort. During such plaintiff planned on personally showing media the overwhelming amount of evidence he had proving the very serious allegations he was making in regards to intentionally unprosecuted crimes and constitutional rights violations committed by named government employee's.

- In response the media contacted Sheriff Scott Isreal, who in turn contacted arresting officer Det. Kessling with instructions to arrest plaintiff as soon as possible. Could not risk the truth being exposed.

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

101. Detective Kessling constructed an affidavit to once again arrest plaintiff without probable cause or authority to do so. (SEE Exhibit J-1) The affidavit authored by Det . Kessling does not list any new crime, nor does it have the required certified copy attached of a Judge's order revoking plaintiffs bond.

- ON 12/28/17 A state law enforcement officer (Det, Kessling) contacted 4 U.S. Marshall's and them falsely arrest and imprison the plaintiff. The U.S. Marshalls office had absolutely zero authority to arrest plaintiff. Plaintiff was in no way a fugitive.

- Det. Kesslings affidavit memorializes a phone call made to Sergeant Christopher Cathcart with the BSO Internal Affairs Division  Since BSO intentionally refused to return plaintiffs phone calls requesting compliance with the conditions of his bond, plaintiff had to resort to call Sgt. Cathcart because he had previously filed a complaint with him. Det. Kesslings affidavit also memorializes how overt the ongoing escalating criminal conspiracy truly was/is;

"The Defendant called Broward Sheriff's office Internal Affairs Division Sergeant Christopher Cathcart and he left a message on his voicemail answering machine. The Defendant stated that he wanted to come to the Broward County Courthouse to file the second taking of forced perjured testimony involving states informant and another individual that they were forced to give. The Defendant further stated that he wanted to meet me ( Det, Joe Kessling) at the court house because he had several questions he wanted to ask me which will probably be in front of the media and he also wanted Sheriff Scott Isreal to be there because he wanted to ask him many questions as well.

It should be noted that the Defendant did contact an assignment editor from channel 6 news and requested that channel 6 news cover his story."

*** Plaintiff was once again falsely arrested in retaliation for him exercising his constitutionally protected rights and duty as a red blood American to report public corruption. In his illegal affidavit Det. Kessling is letting co-conspirator Judge Dava Tunis know, at all costs she cannot allow defendant/plaintiff back out on bond.***

102. Subsequent to 4 U.S. Marshalls showing up at plaintiffs mothers residence ("Carol Gould") wielding assault rifles to arrest plaintiff with absolutely no authority whatsoever to do so, plaintiff was taken to Hollywood Blvd., where officer Gala from house arrest met with Det. Kessling to take plaintiff from Hollywood to Miami to be booked.

- Upon arrival plaintiff was placed in the back seat of officer Gala's car whereby he and Det. Kessling had a conversation that was overheard by plaintiff. Officer Gala advised Det. Kessling that he did not believe that he had the authority to arrest plaintiff, he did not violate house arrest rules and he had never done something even similar to this before. In response Det. Kessling begged "PLEAS DON'T LET HIM GO." During the transportation to Dade County jail officer Gala apologized to plaintiff and stated "you should be in front of the Judge by Monday."

*** Importantly, Officer Gala did not construct an affidavit removing plaintiff from monitored release status until the day after plaintiffs arrest (SEE Exhibit K-1) the execution of defendants false arrest was once again considered an "EMERGENCY." Mr. Gala's affidavit reveals A.S.A Lara Penn(completely without jurisdiction) contacted officer Gala demanding plaintiff's arrest. Ms. Penn was fuuly aware of the fact that she had no authority to request plaintiff's bond to be revoked without plaintiff being charged with new crimes or a Judge's order.

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

***Importantly, during plaintiff's release on bond he left several recorded voice mail messages for presiding Judge Dava Tunis, explaining detail as to the severity of the intentionally unprosecuted crimes surrounding plaintiff's case and where she could find the overwhelming amount of evidence proving plaintiff's allegations filed as a matter of court and public record. Unsurprisingly, co-conspirator Judge Tunis openly chastised plaintiff during court proceedings for the messages he left on her voicemail giving indisputable facts about intentionally unprosecuted crimes committed by high ranking government officials.

103. Once re-booked plaintiff immediately started calling his then attorney Claudia Carrazana to explain the facts of plaintiff's circumstances and she needed to schedule a hearing to re-instate bond IMMEDIATELY.

   - It took plaintiff approximately two weeks for Assistant P.D. Claudia Carrazana to finally speak with plaintiff via jail house call. When plaintiff explained his factual circumstances, that he contacted the media in hopes to expose the ongoing conspiracy thus was arrested, Ms. Carrazana responded "WHY WOULD YOU DO THAT?"

   - During said phone call, plaintiff explained how law enforcement (especially 4 U.S. Marshall's) did not have authority to revoke plaintiff's bond, that the only procedure allowing the revocation of bond, is laid out in FL. R. Crim. P. 3.131 and Det. Kessling put forth a callous disregard for following any form of law when having plaintiff arrested. Ms. Carrazana admitted she had never dealt with anything like what happened to plaintiff and she would look into writing a motion to re-instate bond. Plaintiff had already submitted a motion that he sent to her to re-instate bond in accordance with Rule 3.131. A motion that was much later adopted.

104. A hearing was held on January 18th, 2018 whereby Ms. Carrazana had not constructed any form of motion to re-instate bond. In response, in open court plaintiff demanded for Judge Tunis to conduct a Faretta hearing. For over a half an hour, in open court, the plaintiff fought with Judge Tunis demanding a Faretta hearing, to no avail. Judge Tunis once again flat out refused to allow plaintiff the opportunity to exercise his 6th Amendment right to represent himself. Judge Tunis, in the alternative, stated she would keep her schedule open for a motion to re-instate bond.

   - Subsequent to the January 18th, 2018 hearing plaintiff could no longer tolerate his liberties to continue to be in the balance of persons conspiring to falsely imprison and conceal the truths of plaintiff's circumstances. Consequently, the plaintiff once again wrote Judge Tunis a 5 page letter (SEE Exhibit L-1) which state's at 1;

      " On four (4) separate occasions you flat out refused to conduct a Faretta hearing subsequent to me invoking my constitutional, "absolute right" to proceed as a prose litigant. Which is the appropriate next step in the "due process" of law."

   -   At p.p. 3 & 4 it states;

      " On January 18th, 2018 during a hearing regarding my case you were kind enough to explain you would be open to hear a motion regarding my current incarceration (revoking bond) the entie next week. To date, Feb 6th, 2018, representing Attorney Claudia Carrazana has yrt to construct a motion despite her promises to do such. Resulting in my loss of liberty that began December 28, 2017."

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

-   At 5 it states;
> "Please set a hearing, as soon as possible addressing the two previous emergency motions I filed with this court.
>> 1-   To withdraw the representation of the Dade County Public Defender's office.
>> 2-   To vacate pre-trial release conditions and release on own recognizance.

105. A court date was finally set to re-instate bond on 2/22/2018 (57 days subsequent to plaintiff 12/28/17 illegal revocation of bond) the plaintiff actually believed his illegal detainment would finally be addressed. The transcripts (SEE Exhibit M-1) reveal further layers of criminal obstructions of justice;

(a) A Ms. Kristina Gotera came up to plaintiff just prior to the start of the 2/22/18 hearing and before she even introduced herself she explained the state had the legal right to violate plaintiff's bond—There was a loud conversation that ensued with plaintiff once again having to teach the law to his attorney. Page 4 of transcripts;

> THE COURT: And so were here. And there is a few motions in front of me to re-instate pre-trial release conditions, a letter I believe Mr, Watson and then a motion from the Sate with regard to motions to determine competency. So let's just take this one matter at a time.

> MR. VON ZAMFT: Well, your honor, the State's position is there is only one matter you can do first. We have to determine if he's competent to stand trial, because nothing else matters if he isn't. State's requesting he be examined.

At 6;

> THE COURT: Ms. Gotera have you met Mr. Watson before today?

> MS. GOTERA: NO, this is our first meeting... I would suspect and I advised Mr. Watson I suspect you're going to order court evaluations of Mr. Watson to evaluate that. I've also been informed that their witness wasn't available until 10:30. And I'm on calendar this morning. I'm running late as it is.

> THE COURT: Right okay so I can't I'm in the middle of this other matter and I can't do 10:30 today.

(b) At this stage of the pre-meditated ambush put forth within the 2/22/18 hearing plaintiff had been waiting 2 months for- SO PLAINTIFF COULD REGAIN HIS FREEDOM.

i- The State comes up with a second motion to determine competency, stating nothing else can be considered. (SEE Exhibit N-1)

ii- Plaintiff's Attorney whom he never met before, lies right to plaintiff's face, explaining the state had the right to revoke plaintiff's bond. Which is completely inconsistent with the motion finally constructed by Claudia Carrazana to re-instate bond;

> "Moreover, neither Broward Sheriff's Office nor a monitor release unit representative have authority to revoke or modify Mr. Watson release conditions. Lastly, Mr. Watson did not violate the conditions of his release, and as such, he should be released back to house arrest." SEE Exhibit O-1 at 4

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

iii- Then Plaintiff's attorney and Judge Tunis are too busy to wait 10 minutes for the state's witness (Det. Joe Kessling) when the court date had been scheduled ay 10:30 for 12 days prior to hearing- a witness who allegedly drove all the way from Broward County to be there.

(c) At page 7;

THE COURT:…And I do have a concern because from day one when I met you up in Broward and we had some conversations and then I've seen you a number of times here in Miami. There is a distinct repetitiveness to issues that you raise regarding matters such as you know the Broward state attorney's office and the Broward police officers in collusion with other officers. AND IT'S THOUGH YOU CAN'T MOVE BEYOND THAT ISSUE, AND THAT'S A CONCERN TO ME.

I – Plaintiffs continued efforts to continue his pursuit to report public corruption are a "concern" to Judge Tunis because she was "SPECIFICALLY" chosen to become the most recent champion to the ongoing conspiracy of judicial misconducts.

(d) Judge Tunis' conspiring efforts to criminally obstruct justice begins to spin out of control on page 13;

THE COURT: Even if Ms. Gotera or you are trying to get that evidence into trial, I guarantee you that Mr. Von Zamft and Ms. Penn are going to object because here's going to their argument. Under the 403 analysis, it has nothing to do with the charges…

I – Putting aside, just for a second, that Judge Tunis could not be any more wrong, she is siting a rule of evidence on the state's behalf and advising the state , in advance that if they site this rule it's pre-determined that she is going to grant the state's motion to express exculpatory evidence.

(g) The response of plaintiff is memorialized on p.p. 14 & 15;
THE DEFENDANT: Are you going to let me speak? Are you going to let me speak or not? Because these are matters of great public importance.

The element—one of the elements the state needs to prove is that it serves no legitimate purpose. On like six different occasions they quote me writing under the penalty of perjury that they allowed a 4 year old girl to be repeatedly molested and gang raped. Okay. So, that's what they have to prove. They serve no legitimate purpose for the stalking. And then for the extortion they have to - -that there is no lawful justification…

(h) P.P. 16-18 state in pertinent part;
THE DEFENDANT: We have gone over this, ma'am.
THE COURT: I know we did. But you know what? You're still not getting it.
THE DEFENDANT: You're not talking about what I just said. And today I'm not going to allow manipulations to change the truth and the facts of my case. Let's talk about the truth and facts of my case ma'am. Okay. It serves a legitimate purpose. I wrote in there that the contents of the phone calls is all the evidence that there is. That's it. So, the contents of the phone calls serves a legitimate purpose. I get to prove that yes I do. The law allows for that, especially when the matters sre of great public importance…

Then at 18;

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

THE DEFENDANT: The issue is did I have a right to go to these people to redress my government for intentionally unprosecuted crimes. That's the issue. Does it serve a legitimate purpose to expose the heinous corruptions that infests the United State judicial system.

So you can say I'm incompetent for telling the truth in this courtroom today but you're wrong, because this is the truth. The truth is going to come out period. All these things that I have stated in these phone calls, I'm going to prove in court, that's what it's about.

The conspiring efforts of the state and Judge Tunis to send plaintiff to a mental hospital, instead of risking plaintiff the opportunity to expose said conspiracy is self-evident. However to fully grasp the conspiracy a review of the entire record is manifest.

106. Immediately upon arrival back to Metro West jail, plaintiff contacted his sister Tammy (who had been helping plaintiff prove his innocence by looking up cases, rules of procedure etc.) and asked her to pull up the controlling rule in accordance with determining competency.

- Controlling rule 3.210 (b) (3) states;

" A motion for evaluation shall not otherwise affect the Defendant's right to release"

- Plaintiff filed an emergency writ of habeas corpus with chief Justice Soto, explaining the ongoing criminal conspiracy (SEE Exhibit P-1). An April 2nd hearing was set to consider the issue that plaintiff was once again being detained without lawful authority.
- During the April 2nd hearing there was an allegation that the State had not received a copy of plaintiff's emergency writ of habeas corpus, to which the plaintiff responded at 6;

THE DEFENDANT: Which means I'm being detained without lawful authority, and my attorney put forth a motion on that over a month ago on February 22, which was addressed in this courtroom but because the state stated that my competency evaluation was more important than the untenable fact that I'm being detained without lawful authority, which is wrong. I can't seem to get that issue put forth in front of this court

THE COURT: So what I'm going to do is set this for April 10th for the writ of habeas corpus. (SEE Exhibit Q-1)

107. During the April 10th hearing Judge Tunis once again intentionally refused to address the issues contained within plaintiff's emergency writ of habeas corpus, the very issue as to why the court date was set in the first place (resorting to telling blatant lies in open court). The following conversation(s) ensued;

THE DEFENDANT: Your Honor, I would like to address the issue that I'm being detained without lawful authority. This doesn't supersede the fact and it's clearly laid out in Florida Rules of Criminal Procedure 3.210 (b) (3) So, I continue to have to be detained without lawful authority. Nobody is addressing the issue that I was arrested because I was trying to perform my duty to go to the media and expose the ongoing corruption that's going on in my case and it's right there on the face of the record. And I can't seem to get that issue addressed.

THE COURT: ...So I'm gonna say this one time and I'm not going to engage in further conversation.

THE DEFENDANT: We never addressed the issue.

THE COURT: That's not accurate.

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

THE DEFENDANT: In open court we never addressed the issue. Did you ever write an order for my arrest? Did you ever write an order? That's the only way you can revoke my bond, with an order for my arrest yes or no? Simple.

THE COURT: You were returned by the house arrest individual.

THE DEFENDANT: Which is completely illegal. There is nothing that allows that.

\*\*\* IN response Judge Tunis, once again, spewed nonsensical babble trying to push the issue that plaintiff is incompetent to proceed while he is simultaneously giving Judge Tunis yet another lesson in the law. Which plaintiff responded at 11;

THE DEFENDANT: Right. And you still haven't addressed the issue of pre-trial release motion to re-instate that my attorney put forth February 22, and you never addressed that just for the record.

THE COURT: Let me be clear I've addressed that matter, I'm not readdressing the matter.

THE DEFENDANT: When did you?

THE COURT: I'm not you know what, I'm not here to be someone who has to answer questions in a deposition from you. I conducted court, according to the rules and regulations and-

THE DEFENDANT: Which one 3.121?

THE COURT: Mr. Watson Im not going to answer you I'm not in a deposition-

THE DEFENDANT: You can't

THE COURT: --That I have to answer your questions. I know that I follow the law. I DID WHAT HAD TO BE DONE. I was not the person that brought you back to jail. I was receiving information that you violated the conditions that's why you are in custody.SO IF YOU WANT TO KNOW WHY YOUR IN JAIL LOOK IN THE MIRROR.  \*\*\*\*\*\*\*\*\*\*\*

(SEE Exhibit R-1)

108. The escalating crimes and constitutional rights violations had spiraled so out of control at this point, in a continued effort to criminally obstruct justice, that the Judge Tunis, The State and the Public Defender's Office are colluding to have plaintiff sent to a mental hospital despite the fact that he is 100% accurate in regards to the legal issues he is bringing up in court and the licensed Attorneys are 100% wrong. Let alone the alleged reason plaintiff is being sent to a mental hospital is his allegations are "delusional" when every allegation is corroborated with an overwhelming amount of clear and convincing evidence.

109. The Dade County Public Defender's office flat out refused to put forth the evidence plaintiff not only possessed, but sent copies to the Public Defender's Office (approximately 600 pages) as a matter of court and public record. Evidence plaintiff personally showed to Asst. P.D. Carrazana and Gotera, who themselves made copies.

- During the February 22, 2018 hearing the state hand- picked 2 doctor's to evaluate plaintiff with absolutely zero objection from the P.D.'s office.

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

- Plaintiff obviously aware of the insanity to the callous, pre-meditated government misconducts he continued to face (all for the purpose to criminally obstruct justice), demanded his evaluations be video taped, stating he wanted to send a copy of the recordings to his family so they could release the video to the media.

- Unsurprisingly both Doctors hand- picked by the State (one of which was not even on the Dade County wheel, he was brought in from Broward County, the very County alleged to be utterly infested with corruption Dr. Brannon) each put forth evaluations that plaintiff had a bevy of very severe mental problems which required heavy amounts of medications. In response the plaintiff signed a consent form requesting a copy of the video that was in fact produced only to be denied by the Dade County Public Defender's office. Violating discovery rules against their own client. Assistant P.D. Christina Gotera responded to plaintiff's request for video, that her supervisor Marjorie Alexis said NO.

110. May 23rd, 2018 was the date set for the hearing to determine plaintiff's competency. The plaintiff has always been cognizant that his case was much bigger than itself and he needed to continue to fight to document the unheard of factual circumstances of plaintiff's case. Consequently he opened the hearing with this statement;

THE DEFENDANT: I'm once again being detained without lawful authority. The entire pendency of my case within this kangaroo courtroom has been an obstruction of justice actually escalating and prolonging a ten year conspiracy of abuses and usurpations that far exceed those that impelled our founding fathers to unite their countrymen to become a free nation.

I can suffer being pitted against a corrupt State Attorney's Office and a corrupt judge who are conspiring to conceal the truth surrounding my innocence. But what I will not tolerate is to once again be represented by a corrupt member of the Public Defender's Office who advocate the very crimes being committed against me, rendering me completely incapable of defending against the wholly bogus charges I am currently facing.

Therefore in the interest of justice. I demand the first order of business here today to be to conduct a Faretta hearing. Once I pass the standard of Faretta with flying colors. I would like to address the untenable issue that I am being detained without lawful authority. Then we can begin the traitorous hearing to determine my competency.

THE COURT: Okay. First of all, the only thing that the court said was good afternoon.

THE DEFENDANT: Right. And I needed to respond to that, ma'am, because, once again, I'm being detained without lawful authority. You refuse to address that. This—I have no rights within your courtroom, so I'm going to speak at my behalf. I have that right.

THE COURT: Now Mr. Von Zamft and Ms. Penn and Ms . Gotera what would your suggestion be regarding—

MS. GOTERA: Your honor… I believe, because the client is asking for a Faretta hearing, that HE SHOULD BE ENTITLED TO AT LEAST A FARETTA HEARING BEFORE GOING FORWARD. It's been his contention for a while now, but he has been telling me he doesn't want me to represent him and I have to let the court know that. (SEE Exhibit S-1 p.p. 3-5)

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

- An Assistant Public Defender Jennifer Rodrigue, who specializes in mental health court was present during the 5/23/2018 hearing and when asked about the circumstances in regards to plaintiff's demand to proceed as a prose litigant she responded at 10;

MS. RODRIGUE: ...But what I can tell your honor, of course, every person, even when competency is raised as an issue, until an adjudication is made one way or another the person is deemed competent to proceed. So, currently, legally, anybody who has not yet had an adjudication of incompetency is deemed competent to proceed.

*** It mattered not to Judge Tunis that both Ms. Gotera and a specialist in the area of competency Ms. Rodrigue advised Judge Tunis that according to the "LAW" plaintiff had a right for a Faretta inquiry.

- At p.p. 6 & 7 plaintiff continues his efforts to document the ongoing atrocities;

THE DEFENDANT: IT'S PREDETERMINED, BY THE WAY JUDGE, JUST LIKE IT WAS WHEN I WAS RESENTENCED THE DAY BEFORE I WAS SCHEDULED TO BE RELEASED FROM PRISON. SAME TYPE OF CIRCUMSTANCES, EXACT, WHERE I HAVE NO RIGHTS, ZERO.

111. Page 82 of transcripts reflects plaintiff calling Ms. Gotera over, just prior to his testimony, to demand that she specifically bring up the evidence that plaintiff had in his possession,that proved his allegations to be true and accurate, thus plaintiff is not incompetent.

THE COURT: Let the record reflect that Mr. Watson is speaking to his attorney.

Ms. Gotera, although briefly mentions the overwhelming amount of evidence plaintiff had in his possession, she intentionally does not request detail from plaintiff during his testimony, which is exactly what plaintiff called her over and specifically requested of her. Especially since plaintiff is getting ready to be sent to a mental hospital because his allegations are considered "delusional". Furthermore Ms. Gotera intentionally asks the most basic of questions in regards to plaintiff's knowledge of the law, in particular how it applies to plaintiff's circumstances. Knowing full well at this juncture plaintiff could break down the applicable Florida Statute's, the on p[oint, controlling case laws etc.- The State does a better job with its line of questioning, proving how easily plaintiff meets the standard to be considered competent.

112. The State's line of questioning time and time again shows the continued efforts to conspire to criminally obstruct justice;

A.S.A Mr. Von Zamft is questioning plaintiff during the 5/23/2018 hearing

Q. Do you understand that the Judge would rule on what evidence is allowed in and what evidence is not allowed in?

A. Yes.

Q. And you understand that this Judge has already told you previously that some of the things that you want to bring forward to trial are not going to be allowed in court? Do you remember that?

A. Yes

Q. But you continue to try to bring those out, don't you?

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

A. Well I disagree.

Q. Right. You disagree with the Judge?

A. Correct.

Q. Who's the gatekeeper?

A. Correct, that doesn't make her right.

Q. Well, if you're in trial and you're testifying and the Judge has told you what you're allowed to testify to and what you're not allowed to testify to, are you going to listen to her or just do what you want?

A. Well, first of all. I'm not in trial yet, so I'm going to continue to fight for my rights to try to get evidence entered. But in trial I would obviously accept that.

Q. All Right. So if the Judge instructs you that you can't get into in any of this firebombing or any of these other issues that may or may not be real, you're going to listen to what the court says?

(see Exhibit S-1 at p.p. 90 & 91)

*** The State is well aware of the fact that they charged plaintiff with crimes stemming from phone calls whereby plaintiff time and time again brings up the 10/21/09 firebombing of his medical clinic and how State Attorney Michael Satz in fact authorized such thus, according to the law, plaintiff has a legal right to prove his allegations (within the phone calls resulting in criminal charges) are true and accurate.

THE CONSPIRING CRIMINAL OBSTRUCTIONS OF JUSTICE ARE MADE ABSOLUTELY INDISPUTABLE BY THE FACE OF THE RECORD, AND BELIEVE IT OR NOT THEY ONLY CONTINUE TO ESCALATE FROM HERE.

The utter mockery of the U.S. criminal justice system continues on pg. 97;

Q. You've told us that you would be in a position to follow the court's rulings, right?

A. Correct.

Q. And you remember being released and had certain instructions of things you could and could not do - -

A. Correct.

Q. –When you were released?

A. Correct.

Q. One of those was not contacting witnesses?

A. Correct.

Q. But you went ahead did that, didn't you?

A. I did not. By the way, they said that the phone call was recorded. Where's the recording of that where it says that I said that I wanted to talk to the person. They admit that there is no direcy contact. So where is the evidence? You don't have any There is no recording correct?

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

Q, I'm not answering questions today.

A.   Yes or no?

Q.Thats the part of the—

A. I did exactly what the Judge told me not to do.—You have a state law enforcement officer, Detective Joseph Kessling, who was advised by the media that I wanted Sheriff Scott Isreal to meet me at the courthouse so I could show him the evidence proving all of these crimes. The media contacted Joseph Kessling So he constructed an illegal document to arrest me, the police report, that gave him no authority to arrest me. Then a state law enforcement officer contacts four U.S. Marshals and manipulates them to arrest me falsely. There was no legal authority to do so. And then they bring me in. I still haven't been able to have that heard. And I'd love the opportunity to have that heard where the state said I didn't do what I was supposed to. I made sure I followed the rules of the Judge right here. And you have no proof, you know saying otherwise.

Q. And you did in fact, make phone calls to the Judge's phone as well, right Judge Tunis?

***Once again the face of the record makes indisputable the criminal obstructions of justice, Mr. Von Zamft knowing full well plaintiff's revocation of bond was not only illegal, it was executed as an integral part of the conspiracy to criminally obstruct justice, completely avoids plaintiffs statements in regards to such—LET US NOT FORGET PLAINTIFF IS ALLEGED TO BE INCOMPETENT!!!

113. Further, blatant, documentation of the conspiracy on p.p. 104-106

Q. Do you remember writing this, I believe to Judge Tunis' J.A.- At trial I will prove how the blood of those 17 beautiful people, who were slaughtered in Broward County, is splattered all over Judge Tunis' courtroom. That came after Parkland shooting. Do you remember that?

A. Correct, absolutely.

Q. And that has absolutely what to do with your charges?

A. How many times did I state —

Q. That's a simple Question.

A. You asked me a question I'm trying to answer it.

Q. Okay go ahead answer it.

A. How many times did I write to the state, to the Judge, that the un-rebutted sworn facts that stand as truths - - I'm glad you asked me this question, by the way, I really am - -places the lives and liberties of over a million people in great peril. By the way, the letter that is discussed, written by a fellow inmate, allegedly Mr. Daniel Allen, alleges I was plotting to murder Judges, prosecutor's, law enforcement and their children, yet you never brought it up during the bond hearing. Why would you not bring up something like that.I mean, is it the presumption that you knew it was fabricated? Because I know it's fabricated.

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

Q. Do you want me to answer that?

A. Absolutely I do.

Q. The only reason I didn't bring that up at the bond hearing, I didn't have it at that point or I would have, not only brought it up, I would have tried to have your bond multiplied a hundred fold.

A. Well, you can't even identify who the person is. Did you know that person that they're alleging, Mr. Allen, is, in fact, illiterate, sir?

Q, Well I can't get into these things because it's not my requirement to answer your questions.

114. Despite, the overwhelming amount of evidence proving plaintiff's competency. The pre-determined ruling to adjudicating plaintiff incompetent for the purpose to criminally obstruct justice was handed down by co-conspirator, Judge Dava Tunis at the end of the 5/23/18 hearing.

    - At the end of the hearing Judge Tunis made certain plaintiff's case stayed in her court despite the fact that it was required to be in mental health court.

    MS. ASAH: Will he remain in this division, just so I'll know who I will be calendaring it with?

    THE COURT: Yes. Yes. It has to be in this division because it was by order of the Supreme Court because of the recusals from Broward.

    MS. ASAH: Okay.

    THE COURT: IN OTHER WORDS, THE ANSWER IS, IT HAS TO BE ME.

    Ms. Asah: Okay.

    THE COURT: Me as a human being. Not some other Judge. Which is exactly why I recessed my jury trial to do this, because I did not feel comfortable - - I did not think it was appropriate to have another Judge conduct a competency hearing, particularly when this case was assigned to me by the Supreme Court. It wasn't just transferred to another circuit. So the answer to your question is yes, he stays here.

*** Judge Tunis is once again admitting she was "SPECIFICALLY" assigned by Judge Jorge Labarga *** SEE Exhibit T-1 at pg. 128

115. Once again, unless you had to live in plaintiff's shoes you could never know what it's like to be sent to a mental hospital, knowing full well it's for the purpose to conspire to criminally obstruct justice.

    - Upon entering the South Florida Evaluation and Treatment Center, the intake nurse suggested for plaintiff to be prescribed psychotropic medications. EXACTLY WHAT PLAINTIFF WAS HORRIFIED WOULD HAPPEN-BE GIVEN COMPLETELY UNNECESSARY MEDICATIONS THAT WOULD FOREVER ALTER HIS ABILITY TO FUNCTION.

    - PLAINTIFF NEEDS TO MAKE THIS CRYSTAL CLEAR, SUBSEQUENT TO DR. DUQUETTE PERFORMING HER FIRST EVALUATION OF PLAINTIFF, THE STAFF AT SOUTH FLORIDA EVALUATION AND TREATMENT CENTER EXUDED NOTHIONG BUT PROFESSIONALISM AND CLASS. SUBSEQUENT TO PLAINTIFF'S INITIAL EVALUATION THE DECISION WAS MADE NOT TO INDUCE PLAINTIFF WITH UNNECESSARY MEDICATIONS**** THANK GOD ALMIGHTY****

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

116. Every Doctor who evaluated plaintiff at the South Florida evaluation and Treatment Center found plaintiff competent. Finally a September 18th, 2018 hearing was set.*** Importantly, it took the State over 5 weeks to send the treatment center the requested information, resulting in the delay.

117.Further documentation of the never before conspiracy of constitutional rights violations and actual felony crimes, all purposing to criminally obstruct justice, in one sense, is superfluous at this point, however, plaintiff will do his best to abbreviate the hundreds of further pages of clear and convincing evidence further substantiating and corroborating the allegations of AN ONGOING CONSPIRACY.

The direct examination of plaintiff, on September 18, 2018 was performed by Assistant P.D. Jennifer Rodrigue, which began on page 96 of Exhibit T-1;

Q. So we're going to talk about how you would assist with regards to the maliciously threatening element of this charge.

A. Okay . Well, you know,there has to be a threat and there is no definition of the word threat in the statute for extortion, but the controlling definition is in the State versus Mckinness, which states the threats must be calculated to coerce the victim, to meet the demand of the extortioner in order to prevent the threat from being carried out.

So I'm showing and the controlling case on that is, far as showing that the particular typ0e of threat, Burger versus Burger, whereby Mr. Burger was getting a divorce from Ms. Burger and he explained if you don't turn over the mortgage to me prior to our divorce I'm going to go to the I.R.S. and tell them about the income you had with your beauty shop for the last few years. So that's a conditional threat. If you don't do this I'm going to do this. And in my phone calls there is none of that and I want to show you that.

Q. So, in that case it was unlawful for that Defendant to want the financial gain, right?

A. Correct.

Q. But it was lawful for the Defendant to threaten to report unlawful behavior?

A. Exactly.

Q. And in your calls you are saying that you are reporting unlawful behavior?

A. Correct.

Q. How about maliciously. How would you assist your attorney in your defense regarding the requirement of malicious intent?

A. Maliciously means intentional and without lawful justification. The lawful justification is there. The burden of that is kind of - - it is constitutionally protected to redress your government and that's exactly - - once again that is why I have provided you with the actual transcripts of the phone calls.

Q. And you actually have provided multiple case law?

A. Yes

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

***A.S.A. Lara Penn conducted the cross examination of plaintiff where on page115 it states in pertinent part;

Q. And you write to Judge Sayfie and Kathy Fernandez Rundle about the corruption within the state attorney's office, correct?

A. Well, as you know you intentionally usurped your authority completely bypassing rule 3.131 when my bond was revoked. You called Mr. Gala, yourself and completely abused the laws under 3.131 instead of writing a motion giving notice to my attorney. You didn't do that

So yeah, I'm not happy that my rights were, again, taken from me, and you know, in the complaint that Detective Kessling put together, he say's I'm getting ready to contact the media. And that's not in there. It's not in the thing that I can't contact the media.

Q. And you discussed all of that with your Public Defender but you do your own advise and you do your own decisions

A. I spoke with the Public Defender and they ended up adopting my motion.

*** The blatant conspiracy to criminally obstruct justice actually continues to escalate during the duration of the hearing. The bottom line is, co- conspirator Judge Dava Tunis once again put forth her pre-determined ruling that plaintiff was incompetent and once again sent him back to a mental hospital *** THIS TIME WITH SPECIFIC INSTRUCTIONS THAT PLAINTIFF IS REQUIRED TO HAVE PSYCHOTROPIC MEDICATIONS INDUCED***

118. The Doctor's at South Florida Treatment Center were very disappointed with the conduct of the state and Judge Tunis, during the hearings to determine competency. Explaining they had "never seen anything like it." The true blessing was they were not going to be bullied into prescribing medications that they DO NOT BELIEVE ARE NECESSARY.***IMPORTANTLY IT WAS A.S.A. MR. VON ZAMFT WHO STRINGENTLY PUSHED FOR EVALUATING DOCTORS HAND PICKED BY THE STATE TO CONTINUE THERE PERSISTANCE THAT PLAINTIFF NEEDED TO BE MEDICATED*** SEE TRANSCRIPTS***

-Almost immediately upon being re-instated to treatment center, the head Psychologist Dr. Picanol spent several hours with plaintiff and subsequent to a thorough evaluation, found plaintiff competent.

- At the subsequent hearing Judge Tunis reluctantly ruled that at the next hearing plaintiff would be found competent. The reason for the delay was plaintiff was scheduled for a minor surgery, the following day.

119. At the opening of the hearing whereby there was previously a verbal, binding agreement made between the parties that at the next hearing Judge Tunis would adjudicate plaintiff competent co-conspirator Mr. Von Zamft opened the hearing with this statement;

MR. Von Zamft: However, over the period of the time since then, I've been given a lot of thought to what we need to do with Mr. Watson and what should be done.

I believe that the testimony itself is still convincing and proof that he is not competent - - still not competent to proceed. I believe that this court should still find him incompetent to proceed.. However, it's also my opinion not belief that Mr. Watson is not going to get any kind of cars if he goes back to the

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

hospital he was in. For whatever reason is happening, I believe the Doctors and the staff there were so intransigeant about dealing with Mr. Watson that they were not objective.

My request would be, if the court agrees that he still be found not competent to proceed...MAYBE HE'LL TAKE MEDICINE. (see Exhibit U-1 at p.p.4&5)

*** THE U.S. CRIMINAL JUSTICE SYSTEM HAS REACHED NEW LOWS WHEREBY AN ASSISTANT STATE ATTORNEY IS NOW ABLE TO OVERRIDE THE DIAGNOSIS' OF SEVERAL LICENSED PSYCHOLOGISTS-BELIEVING PLAINTIFF SHOULD BE ON "MEDICINE" ALL FOR THE PURPOSE TO CONTINUE TO CONSPIRE TO CRIMINALLY OBSTRUCT JUSTICE ***

120. On, page 27 Judge Tunis admits a personal relationship with one of the alleged victims;

THE COURT: ... Yes. My colleague, according to the 4th District Court of Appeal, my colleague, Jeffrey Levenson, THAT I KNEW FROM NEW JUDGE'S SCHOOL...

*** Then on page 34 Judge Tunis completely loses any form of sanity when blatantly committing the crime of extortion;

THE COURT: ...I'm telling you that it's not going to come into evidence. I'm telling you right now there is no way that a jury is going to end up knowing that you had a sentence by Judge Levenson, they took appeal, he was reversed and you won. That's not an issue It has nothing to do with the case here before me. And if you don't get that, you know I'm sending you, back to the hospital. Because we would be wasting our time. This is the gravaman of the issue. Can you understand and abide by that that's it.

The defendant: Yes I can

*** It does not get any more black and white;

(a) If plaintiff does not abide by Judge Tunis' criminal obstructions of justice by not bringing forth truthful, exculpatory evidence, as to the intentionally unprosecuted crimes (committed by her friend Levenson and other colleagues), laid out in the phone calls plaintiff made, resulting in his criminal charges.
(b) Judge Tunis will not hesitate to unnecessarily send plaintiff back to a mental hospital.

*** Meeting all the requirements to prove the crime of extortion, UNLIKE THE WHOLLY BOGUS CHARGES OF EXTORTION PLAINTIFF WAS/IS FACING***

- Plaintiff relented to the ongoing criminal obstructions of justice because he knew, once found competent, he would be able to represent himself and for the plaintiff to once again be found incompetent, the whole process would have to start over from the beginning.
- At the end of the 12/20/18 hearing plaintiff reminded Judge Tunis that the issue of his revocation of bond had not been addressed. A court date was set for 1/5/2019. One year and a week subsequent to plaintiff's bond being illegally revoked.

121. The plaintiff has put forth more than enough undisputed facts proving a never before conspiracy of constitutional rights violations, already constructed within instant complaint. The misconducts inside the conspiracy continued to escalate up until 2/26/19 when plaintiff was extorted to accept a deal offered directly by Judge Tunis for the plaintiff to "GO HOME TODAY" or be sent back to a mental hospital via a renewed motion to determine competency constructed by co- conspirators within the Dade County

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

State Attorney's office. Plaintiff will simply put forth exhibit V-1 and explain all of it's contents will be used to prove the causes of actions/claims put forth within instant complaint.

- It would be re-miss of plaintiff not to point out a couple of other highlight's

- The Dade County State Attorney's office put forth a motion asking why plaintiff should not be held in criminal contempt for sending truthful information in regards to intentionally unprosecuted crimes committed by many BSO employee's to newly appointed Sheriff Gregory Tony.*** Importantly, one of the main culprits who is named in the correspondence is none other that Detective Gregory Lecarra. The BSO officer recently suspended for pepper spraying the defenseless black 15 year old, then throwing him to the ground. The plaintiff will be presenting his first- hand knowledge that Det. Lecarra is a racist, particularly against African Americans

-Plaintiff must point out here that Gregory Tony received two separate correspondences from plaintiff and made an intentional callous decision to hand it over to the very named persons involved in the conspiracy.

- Shortly after plaintiff's release from Dade County jail, he was able to find out who the 19 year old was, who died due to the sinister interests of the Broward County State Attorney's Office and BSO attempting to secure the conviction of Dr. Marilee Glauser, known to be experiencing alzheimers. Plaintiff had a never before type of conversation with his father.

Yet another issue of first impression is, plaintiff had absolutely zero opportunity at a fair trial during the pendency of his case in Dade County. The misconducts surrounding plaintiff's case had constantly escalated over the past ten years. The plaintiff was in legitimate fear for the safety of his life. The record makes untenable the plaintiff could not have fought any harder for the opportunity.to go to trial. But at what cost? What was going to happen to plaintiff at a different mental facility with conspirators more desperate than ever to induce plaintiff with unnecessary "medicine." The only viable answer was to accept the offered deal (extortion) so plaintiff can do exactly what he's doing. Continuing his efforts of truth and justice. Filing post-conviction back in Judge Tuinis' courtroom would quite literally be suicide.

STATING CLAIMS IN PARTICULAR PERTAINING TO CONSPIRACY

The never before conspiracy laid out in claim 11 puts forth an overwhelming amount of evidence that named Defendants conspired to deprive plaintiff of the following constitutionally protected rights;

(a) Plaintiff's First Amendment rights were deprived when in retaliation for plaintiff sending correspondences protected by the first Amendment explaining he was going to do everything in his power to make certain all conspirators were prosecuted "immediately after my release" plaintiff was illegally resentenced the day prior to his scheduled release.

(i)-Subsequent to plaintiff being released from prison he continued his efforts to expose public corruption, which are actions protected by the U.S. Constitution. In retaliation, co-conspirators (Defendant's Levenson, Haimes, Gillespie Neuner, and others) had a meeting and decided the only way they were going to halt plaintiffs constitutionally protected rights to expose their public corruption was to once again have plaintiff arrested, without probable cause to do so which was in fact executed on July 18th, 2017 by a Detective Joseph Kessling depriving plaintiff of his First Amendment rights.

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

(ii)-Subsequent to being released on bond for the July 18th, 2017 arrest , in retaliation for plaintiff wanting to exercise his first Amendment rights by contacting the media, and requesting they accompany plaintiff during the tyrannical escort, plaintiff was once arrested without probable cause or authority to do so, once again depriving plaintiff of his first Amendment rights.

(b)  Plaintiffs Fourth Amendment rights were deprived when on 3/24/09 named members of BSO falsely imprisoned plaintiff when, arrested plaintiff without probable cause, fabricated probable cause affidavit, "forced" witness William Glenn Steer's to perform knowingly perjured, inculpatory testimony, destroyed wiped the recording containing exculpatory evidence on digital recorder #100118958.

(i)Plaintiff's Fourth Amendment rights were once again deprived when without probable cause or authority an arrest affidavit was constructed that resulted in plaintiffs never before illegal resentence for the same crime, the day prior to his scheduled release.

(ii) Plaintiff's fourth Amendment rights were once again deprived when on 7/18/2017 without probable cause plaintiff was arrested,

(iii) Plaintiff's Fourth Amendment rights were once again violated when on 12/28/17 plaintiff was arrested without probable cause or legal authority.

(c)  Plaintiff's 5th and 6th Amendment rights were deprived when an exculpatory defense witness (William Glenn Steers) through substantial/if not criminal tactics, were interfered with, to testify on plaintiff's behalf. Other 5th and 6th Amendment rights violations are self- evident and a matter of record detailed within instant complaint.

(d)  Plaintiff's fourteenth Amendment rights were continually deprived him throughout the entire conspiracy, both procedurally and substantively. The undisputed facts set forth, prove State intrusions into plaintiff's right to be free, personal privacy, bodily security and common decency were so brutal, demeaning, and cruel, as to time and time again, shock the senses and conscience.

Wherefore, Plaintiff, Todd E. Watson, demands judgment against all named Defendant's, for compensatory damages physical pain and suffering, mental and emotional distress, impairment of reputation, personal humiliation and all other relief available as reasonable under the circumstances, Plaintiff hereby demands a trial by jury on all issues so triable.

COUNT III MALICIOUS PROSECUTION

121. Plaintiff re-alleges and re-avers paragraphs 1-120 above as if restated herein.

122. As per previously mentioned, that the Defendant's in this claim Detective Gregory Lecarra, Detective William Schwartz, Sergeant George Anthony, and Detective Yadell Romero deprived plaintiff of his Fourth Amendment right to be free from malicious prosecution by arresting him, without a warrant and probable cause, on 3/24/2009.

123. "To establish a federal malicious prosecution claim under section 1983, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of her FOURTH Amendment right to be free from unreasonable seizures" Kingsland, 382 f.3d at 1234.

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

- As previously brought to the attention of this court, instant complaint is one of firsr impression on several issues, the first one to be considered is, the facts that plaintiff, although had his resentence overturned by the 4ᵗʰ DCA, plaintiff's original sentence remains intentionally languishing in Broward County Florida whereby Circuit Court Judge Elizabeth Scherer, flat out refuses to order the state to respond to plaintiff's newly discovered evidence motion. The reason obviously being the state would be responding to their very own ongoing conspiracy of criminal conduct and constitutional rights violations.

124. Outside the issue of first impression the facts previously laid out proving the elements of malicious prosecution are quite overwhelming. To briefly re-hash.

(a) Detective Gregory Lecarra fabricated the probable cause affidavit.

(b) Detective William Schwartz destroyed/wiped the recording contained on digital recorder #100118958 and "forced" witness William Glenn Steers to perform a knowingly perjured/inculpatory sworn statement.

(c) Sergeant George Anthony was the highest ranking officer present on the night of 3/24/2009 and was present during the sworn statement of Mr. Steers knowing full well it was filled with false statements. Sergeant Anthony, thus fabricated a sworn statement he authored, corroborating the fabrications in Detective Lecarra's probable cause affidavit.

(d) Yadell Romero signed off on the probable cause affidavit knowing full well it had been fabricated, and played a vital role in the decision to continue to arrest despite knowledge of plaintiff's actual innocence.

Wherefore, Plaintiff, Todd E. Watson, demands judgment against Defendants, Lecarra, Schwartz, Anthony, and Romero for compensatory damages for imprisonment, discomfort, injury to his health, deprivation of society, and all other relief available as are reasonable for the circumstances.

## COUNT IV INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

125. Plaintiff re-alleges and re-avers paragraphs 1-124 above as if restated herein.

126. To state a claim in regards to intentional infliction of emotional distress a plaintiff must allege (1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) the conduct caused the emotional distress; and (4) the distress was severe. Liberty Mut. Ins.v Steadman, 968 so.2d 592, 594, (Fla. Dist. Ct. App. 2007)

- Rarely if ever has a case met the standard that the behavior of Defendants was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency" Id.

- Having "forced" the State's witness William Glenn Steers to perform perjured testimony. Then subsequent to Mr. Steers coming forward and confessing to an officer of the court, Defense Attorney James Lewis that police had "forced" him to participate in their conspiracy of pre-meditated government misconducts, they simply showed back up to Mr. Steers residence to once again force him to perform perjured testimony.

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

- When facing the consequences of their own criminal conducts, conspirator public employee's simply blamed a knowingly innocent senior citizen "Carol Gould" for the first degree felony Tampering crime in fact committed by conspirators.

- Where do we go from here? The cover up of the 10/21/2009 firebombing of plaintiff's medical office, to cover up the death of Jonathon Kyle Graham and many other persons who received medications from Dr. Glauser.*** Or maybe how plaintiff was resentenced the day prior to his scheduled release?

Wherefore, Plaintiff, Todd E. Watson, demands judgment against all previously named Defendants, for emotional damages stemming from the years and layers of intentional infliction of emotional distress and all other relief available as are reasonable for the circumstances.

## CLAIM V SPOILATION

126. Plaintiff re-alleges and re-avers paragraphs 1-125 above as if restated herein.

127. On the evening of 3/24/2009, Defendant, Detective William Schwartz, when transferring the contents of digital recorder #100118958 onto a CD, intentionally omitted the exculpatory recorded conversation inside Mr. William Glenn Steers truck when transferring the contents of said recorder.

- This recording was alleged from day one by plaintiff to have in fact have been recorded and it would in fact exonerate plaintiff.

- Page 20 of the State's discovery is a property receipt that actually memorializes Det. William Schwartz' illegal transfer.

Wherefore, Plaintiff Todd E. Watson, demands judgment against Defendant William Schwartz, for compensatory damages, physical pain and suffering, mental and emotional distress, impairment of reputation, personal humiliation. And all other relief available as are reasonable for the circumstances.

## CLAIM VI PROSECUTORIAL MISCONDUCTS

128. Plaintiff re-alleges and re-avers paragraphs 1-127 above as if restated herein.

129. Plaintiff is very cognizant of the absolute immunities that prosecutor's enjoy. Pathetic immunities that have ripped to shreds the fabric of this country. Thanks to the absolute immunities that prosecutors and Judges enjoy corruption within the U.S. Criminal Justice system has become an epidemic.

130. Undisputed facts of instant case obliterate the absolute immunities of prosecutors A.S.A. Denise Neuner and A.S.A. Morgan Rood.

131. Ms. Neuner "ordered" Dena Aiello to steal all the contents of my office in order to coerce plaintiff into a position whereby he had to accept the Sate's offered substantial assistance deal. Allowing plaintiff the opportunity to salvage his medical office,

- Ms. Neuner also conspired with the Florida Health Department to fabricate an alleged investigation performed at plaintiff's medical office on 10/16/2009.

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

- Ms. Neuner was also responsible for retrieving the photograph of plaintiff's mother "Carol Gould" from the bank thus allege Ms. Gould (a knowingly innocent senior citizen) was in the midst of a first degree felony tampering crime Ms. Neuner was in fact one of the actual perpetrators of.

- Ms. Neuner fabricated official documents as a matter of sport. Continually making an utter mockery of the Justice system.

- Ms. Neuner in a state of utter paranoid schizophrenia she would be held accountable for her actual felony crimes and constitutional rights violations participated in evry hearing involving the State's emergency motion. Tendering a question during the 11/10/2014 hearing (the day prior to plaintiff's scheduled release from prison) knowing the answer from witness Mathew Ramos was going to be a pre-meditated lie. ETC, ETC, ETC.

132. As, for A.S.A. Morgan Rood he in fact tendered a copy of the Hummel case to both co-conspirators Judge Jeffrey Levenson and Assistant P.D. Tamara Curtis and in open court completely lied about the contents of the case. Purposing the destruction of plaintiff's will to continue to fight to prove his innocence. Plaintiff can only pray the reviewing Judge has some form of moral compass.

Wherefore, Plaintiff Todd E. Watson, demands judgments against Defendants A.S.A. Denise Neuner and A.S.A Morgan Rood for compensatory damages, physical pain and suffering, mental and emotional distress, impairment of reputation, personal humiliation and all other relief available as are reasonable for the circumstances. Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 1st day of July, 2019 by:

Todd E. Watson, Plaintiff

2424 Okeechobee lane

Ft. Lauderdale, FL 33312

By: _Todd E Watson_

Todd E. Watson, Plaintiff

UNDER THE PENALTIES OF PERJURY I DECLARE INFORMATION HEREIN TRUE AND ACCURATE

ISd _Todd E Watson_
Plaintiff

7-1-2019
Date

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

LISYING OF EXHIBITS

A- NOTICE TO CITY MUNICIPALITIES

B- PROBABLE CAUSE AFFIDAVIT

C- SWORN INCIDENT REPORT

D- SWORN STATEMENT OF STEERS

E- PAGE 71 OF DISCOVERY

F- STEERS MEDICAL FILE

G- SWORN STATEMENT OF SERGEANT GEORGE ANTHONY

G-1- RULING OF 4TH DCA

H- MOTION BASED ON NEW EVIDENCE

I-PLEA AGREEMENT

J- DOCKET OF BROWARD CASE 095531CF10A

K- SECOND TAKING OF STEERS FORCED PERJURED TESTIMONY

L- FABRICATED SIGN IN LOG

M- FORGED POWER OF ATTORNEY

N- OBITUARY

O- POLICE REPORT AIELLO ORDERED TO STEAL PLAINTIFF'S PROPERTY

P- POLICE REPORT OF FIREBOMBING

Q- STATES WRITTEN RESPONSE 400.00 CONSPIRACY ALLEGATION

R- DENIAL OF 3.850 MOTION

S- RESPONSE TO SPENCER DENIAL

T- 4THH DCA BARRING PLAINTIFF

U- MOTION VIOLATIONS OF S/A AGREEMENT

V- CONFINEMENT

W- CORRESPONDENCES TO JUDGE WEINSTEIN

X- ARREST PAPER WORK

Y- "EMERGENCY" MOTION

Z- TRANSCRIPTS OF 10/30/14 HEARING

AA- TRANSCRIPTS OF 11/03/14 HEARING

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

BBTRANSCRIPTS OF 11/07/14 HEARING

CC- TRANSCRIPTS OF 11/10/14 HEARING

DD- P.D. RESPONSE TO EMERGENCY MOTION

EE- E-MAIL FROM MARA HERBERT

FF- DOCKET 4TH DCA

GG- LETTER TO LEVENSON

HH- NO CONTACT ORDER WITH LEVENSON

II- LETTER TO MERRIGAN

JJ-ORDER TRANSFERRING CASE BACK TO LEVENSON

KK- LETTER PLOTTING MURDERS

LL- 2ND LETTER TO MERRIGAN

MM- ORDER DENYING MOTION TO CORRECT ILLEGAL SENTENCE

NN-MOTION TO CORRECT SENTENCING ERROR

OO- DEPOSITION OF LEVENSON

PP- NO CONTACT ORDER BROWARD COUNTY COURTHOUSE

QQ- LETTER TO CIKLIN

RR- COMPLAINT

SS- INVOICE DENISE ROCK

TT- SWORN AFFIDAVIT

UU- E-MAIL TO MICHAEL SATZ

V V- E-MAIL TO LEVENSON

WW- FLORIDA HEALTH DEPARTMENT

XX- FLYER LISTING CRIMES

YY-COPY OF YOUTUBE

ZZ- E-MAILS TO CHRISTOPHER CATHCART

A-1-RESPONSE FROM I/A

B-1E-MAILS TO SHERIFF SCOTT ISREAL

C-1-DEPOSITIONS

D-1-EXECUTIVE ORDER 17-213

IN THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

E-1-TRANSCRIPTS OF 8/16/17 HEARING

F-1-TRANSCRIPTS OF 8/23/17 HEARING

G-1-ORDER

H-1- FL SUP. CT. CASE #2018-23

I-1-LETTER TO JUDGE TUNIS

J-1-ARREST AFFIDAVIT KESSLING

K-1-OFFICER GALA'S AFFIDAVIT

L-1-LETTER TO JUDGE TUNIS

M-1-TRANSCRIPTS 2/22/18 HEARING

N-1- MOTION TO DETERMINE COMPETENCY

O-1- MOTION TO RE-INSTATE BOND

P-1- EMERGENCY WRIT OF HABEAS CORPUS

Q-1- APRIL 2ND TRANSCRIPTS

R-1- APRIL 10TH TRANSCRIPTS

S-1- MAY 23RD TYRANSCRIPTS

T-1- TRANSCRIPTS OF 9/18/18 HEARING

U-1-TRANSCRIPTS OF 12/20/18 HEARING

V-1- ACCUMULATION OF REMAINING EXHIBITS